EA2LBRIC                        Conference

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   RONALD BRITT,

 4                 Plaintiff,

 5           v.                          13 CV 8289 (KPF)

 6   THERMALD REALTY I, L.P., et
     al.,

 7
                   Defendants.
 8
     ------------------------------x
 9                                       New York, N.Y.
                                         October 2, 2014
10                                       3:35 p.m.

11   Before:

12                   HON. KATHERINE POLK FAILLA,

13                                          District Judge

14                          APPEARANCES

15   GREGORY KOERNER
          Attorney for Plaintiff
16
     GOULD & BERG LLP
17        Attorneys for Defendant Thermald
     BY:  JANE BILUS GOULD
18
     KAUFMAN DOLOWICH & VOLUCK, LLP
19        Attorneys for Defendant Wavecrest
     BY:  JEFFREY ETTENGER
20

21

22

23

24

25
```

EA2LBRIC                    Conference

1          (Case called)

2          THE COURT:  We are here today for several things.  I

3    have received what I believe to be two different motion

4    applications, and you'll tell me if I'm missing anything.

5          There was an application by Mr. Koerner to amend his

6    complaint to add a particular claim to it, and I have

7    Ms. Gould's response to that.

8          Additionally, I think I have a request on the part of

9    Mr. Ettenger to move for summary judgment regarding Wavecrest.

10         Am I correct, sir?

11         MR. ETTENGER:  Yes, your Honor.

12         THE COURT:  And, Mr. Koerner, did you get that

13   particular application?

14         MR. KOERNER:  I did.

15         THE COURT:  Did you respond to it, sir?

16         MR. KOERNER:  I did not.

17         THE COURT:  So we'll start talking about that today.

18         MS. GOULD:  Your Honor, I also submitted a letter

19   requesting to move for summary judgment on behalf of my clients

20   on August 21.

21         THE COURT:  Okay.  Let me see.  I want to look at your

22   letter for a moment then because was your respond folded into

23   that?

24         MS. GOULD:  No.

25         MR. KOERNER:  I don't recall getting that letter.

1          THE COURT:  That one I'm not sure I received.

2     Ms. Gould, please excuse me.  So let me look at the docket

3     sheet.  I pulled off a number of documents and I want to make

4     sure.

5          I have a letter response from Ms. Gould dated the 21st

6     of August.  And then the next thing I have on the 21st is a

7     letter from Mr. Koerner.  And then I have something from

8     Mr. Ettenger that's dated the 26th of August.  So I actually

9     don't have it in ECF.

10         MS. GOULD:  Well, I don't have the ECF copy.  On my

11    letter it says via email and ECF.  If it wasn't ECF, it's our

12    office's fault.  But I can hand a copy up to you.

13         THE COURT:  Sure.  Do you also have a copy to show to

14    Mr. Koerner?

15         MS. GOULD:  I actually don't.

16         MR. ETTENGER:  Your Honor, I have a copy which I would

17    be happy to give to Mr. Koerner.  I don't actually need that

18    for now.

19         THE COURT:  So let me ask the parties to wait a moment

20    so I can read Ms. Gould's letter as well.  Thank you very much.

21         Ms. Gould, this is what I have.  So it begins as a

22    response to Mr. Koerner's application to amend.  And it ends by

23    saying I think -- and I'm being a little bit summary here --

24    that even if you let it happen, you should consider its

25    futility because we're going to win on our summary judgment

1   motion.

2          So this is the one letter that I have seen.  And,

3   Mr. Koerner, you'll tell me if this is the one letter you've

4   seen as well.

5          MR. KOERNER:  That's right.

6          THE COURT:  Okay.

7          MS. GOULD:  And then I responded to Mr. Ettenger's

8   letter.

9          THE COURT:  None of us have that.  Mr. Lopez, could

10  you please take that from Ms. Gould.  Let's do an exchange,

11  please.  I'll give this one back.  Thank you very much.

12          Mr. Ettenger, did you bring a copy of her other

13  letter?

14          MR. ETTENGER:  I just gave Mr. Koerner whatever I have

15  in my file today from Ms. Gould.  Sorry.

16          MS. GOULD:  That related to Mr. Ettenger's summary

17  judgment motion on cross claim.

18          THE COURT:  I see.  Okay.  All right.  Mr. Lopez, not

19  to make you run around the courtroom today, if you could show

20  that to Mr. Koerner and then it can go back to Ms. Gould.

21          Can I ask, Ms. Gould, when you go back to your office

22  today, have it refiled.  If nothing else, email it to us and

23  we'll docket it because it's not on ECF and I'm looking at ECF

24  right now.

25          MS. GOULD:  Yes, your Honor.  But actually there

EA2LBRIC                    Conference

1   was -- I have a different motion that relates to summary

2   judgment claim.  A different letter, I'm sorry.  Let me just

3   give it up to you now.

4          MR. ETTENGER:  I believe that's the letter I just

5   handed to Mr. Koerner.

6          THE COURT:  Thank you.

7          MR. ETTENGER:  I will make sure that gets docketed.

8          THE COURT:  Whichever of these I should have had

9   please have docketed.  Okay.  All right.

10          Why don't we begin with the motion with which I have

11   some familiarity which is the application to amend the

12   complaint.  So, Mr. Koerner, let me talk to you.  What I want

13   to do, sir, is I just want to as I'm speaking with you pull up

14   your letter to me because I had looked at that right before I

15   came on the bench.  All right.

16          Go ahead, please, sir, anything you want to add to

17   that.

18          MR. KOERNER:  There's not really much I want to add to

19   the letter.  I will say from the outset any mistake that was

20   made as far as not including these causes of action, it's my

21   mistake.  It's law firm error.  I've said from the outset I

22   don't do a whole lot of sexual harassment cases or

23   discrimination cases.  It's my fault, my bad.  I don't think

24   Mr. Britt should be penalized for it.

25          Certainly, the defendants have been on notice of these

1    claims and the exact nature of these claims from the outset.  I

2    haven't tried to hide the nature of the claims or the

3    allegations, and I don't see how any prejudice would result

4    from the amendment of the complaint at this point.

5          THE COURT:  All right.  But let me ask you this

6    question, sir.  Typically when I'm asked to approve an

7    application to amend, we're at the stage where it's covered by

8    Rule 15, which is a rather liberal standard and indicates that

9    leave should be granted unless something horrible is going to

10   happen.  And so the standard there for Rule 15 analysis tends

11   to be focused on prejudice to the defendants, and I understand

12   that's why you're telling me now you don't think there is much

13   prejudice to the defendants.

14         I think Ms. Gould is correct that because of the

15   operation of the case management plan and because there is that

16   provision on the first page of the case management plan that

17   says that amendments to the pleadings must be done within a

18   certain period of time -- and in this case actually it was 60

19   days, which is much nicer than I usually am -- that once that

20   happens and once you've gone beyond that period, it is on in

21   this case, you, sir, to prove good cause.  And so what she's

22   saying is that your perhaps unfamiliarity with New York City

23   statutes does not suffice under the law as good cause.

24         And so let me back up first and ask you, do you agree,

25   sir, that at this stage what I'm supposed to look at are two

1   things:  the Rule 15 standard and the Rule 16 standard?

2            MR. KOERNER:  I agree with that.

3            THE COURT:  Okay.  And so really the question for me

4   is one of good cause.  And also, I suppose, bound up in that is

5   considerations of prejudice.

6            MR. KOERNER:  Correct.  And part of the analysis here,

7   I think, in the life of this litigation I've bent over every

8   which way to try to resolve this at the outset.  I was told

9   throughout the litigation that, look, yes, we're going to

10  recommend settlement in this case.  We have to go through all

11  of the discovery.

12           THE COURT:  I'm going to stop you, sir.  I'm not sure

13  I'm supposed to hear that.

14           MR. KOERNER:  Okay.  In any event, we were in a

15  situation where we were pursuing resolution of this in good

16  faith.  And then we've come in and basically there's a no-pay

17  position on the part of the defendants, and now there's these

18  motions to dismiss all the claims which I have pled.

19           So what we're looking at here is a situation where if

20  I'm not allowed to amend the complaint and they're successful

21  on their motions to dismiss various claims they've indicated

22  they're going to make, we're left with a situation where a

23  litigant is going to be denied his day in court.  And if that's

24  what the judge is going to determine, then I'll have to decide

25  whether he's going to appeal or not.  There's nothing -- it's

1    my fault.  It's not Mr. Britt's fault.  Whether that's good

2    cause or not there's been no -- I think that there is good

3    cause.

4         I was trying to resolve this case.  I went through the

5    discovery process and cooperated with all their demands and was

6    told that we would resolve this.  And my client's position has

7    always been we'll basically resolve this at whatever a

8    reasonable third party will tell us.  And unfortunately --

9         THE COURT:  I'm sorry, I missed what you just said.

10   Something about whose clients?

11        MR. KOERNER:  My client, Mr. Britt, has said we will

12   settle this case at whatever a reasonable third party will tell

13   us, whether it be a magistrate judge, arbitrator or mediator,

14   your Honor, if we have to take this to trial.  I was laboring

15   under the impression throughout this litigation after spending

16   however many thousands of dollars that we were going to finish

17   discovery, we were going into the magistrate and we would

18   conduct a good faith settlement negotiation and, in fact, no,

19   it's zero.

20        So at that point I have to really -- it's on me.  I

21   understand that, your Honor.  But at that point I said, wow, I

22   really need to amend this complaint because they're going to be

23   making these motions to dismiss the cause of action I have

24   pled.  So I immediately alerted the Court that I'm making the

25   request to amend the complaint as soon as I was aware of it.

1          THE COURT:  As soon as you were aware of what?

2          MR. KOERNER:  As soon as I was aware of their pending

3     motions to dismiss or summary judgment, rather, as opposed to

4     what their stated intent was to try to resolve this via third

5     party mediation.

6          THE COURT:  And see, Mr. Koerner, that was something

7     that I was puzzled with in your letter, and I might ask still

8     for a bit more clarification.  When what you said is I had

9     hoped for progress towards a settlement, however, defendants

10    have maintained a no-pay position, I understood you to be

11    saying that somehow they should be penalized for refusing to

12    settle the case.  That's not in fact what you're saying.

13         MR. KOERNER:  No.  I'm sorry if I was unclear.

14         THE COURT:  Remember, I don't know and I'm not sure I

15    should know the progress of the parties' settlement

16    discussions.  I thought there are rules of evidence about that

17    kind of stuff.  It doesn't go to the jury.  I'm not sure how

18    what you guys are doing operates as some sort of estoppel.

19         MR. KOERNER:  It's not estoppel, your Honor.  I think

20    it's really the interest of justice.  We have claims here that

21    are well established.  Discovery has borne out my client has

22    his version of events; their client doesn't remember what

23    happened.  You know, we have valid claims here.  And the fact

24    that there may be weaknesses in my complaint, the factual

25    allegations are all in there.  There's no prejudice.  I think

EA2LBRIC                         Conference

1   as far as the good cause, I think there's good cause to allow

2   the amendment of the complaint.

3           THE COURT:  Sir, let me talk to you a little bit more

4   about good cause.  Are you suggesting that you were prevented

5   from filing an application to amend the complaint because of

6   something the defendants did or said?

7           MR. KOERNER:  Absolutely not.  Well, I certainly, if I

8   had known that they were going to, contrary to what they said,

9   specifically that they were going to take a no-pay position and

10  that they were going to be making summary judgment motions on

11  the claims, then I mean it wouldn't prevent me.  But that was

12  the circumstances that led up to my having to request an

13  amendment at this late date.

14          THE COURT:  Okay.  But, Mr. Koerner, your letter also

15  says that the reason you're seeking amendment at this time was

16  because you did not initially understand that this was a claim

17  that you could plead.  And I don't understand the

18  relationship -- and maybe there is no relationship -- between

19  your knowledge of New York City law and these settlement

20  discussions.

21          MR. KOERNER:  No, there's not really a relationship

22  there.

23          THE COURT:  Okay.  When did you know that you had a

24  claim under New York City law?

25          MR. KOERNER:  When they started saying that they're

1    going to make these motions for summary judgment and that

2    because I don't have the city law claim -- I think it was

3    actually the magistrate judge who said you don't have the city

4    law claims pleaded in your complaint and the judge might not

5    allow you to amend at this late date, so you should really

6    settle.

7              MR. ETTENGER:  Judge, if I may, I apologize.  I can

8    clear this up.  Mr. Koerner wrote a letter to us I think two or

9    three days before the mediation requesting permission to amend

10   and then we went to the mediation.

11             THE COURT:  I'm sorry.  When was the mediation, sir?

12             MS. GOULD:  August 15.

13             MR. ETTENGER:  So the day before the mediation he

14   wrote us a letter indicating that he wanted to amend for New

15   York City claims.  We went to the mediation.  Obviously, it did

16   not settle.  And thereafter we wrote the letters to the Court

17   requesting this conference, and Mr. Koerner wrote a letter

18   requesting to make a motion to amend.

19             So it wasn't like we went to the mediation and then

20   after mediation he realized that he had this claim or the

21   magistrate told him that.  He obviously found that out before

22   the mediation but only wrote to the Court after it didn't

23   settle.  So I just wanted to clear that issue up, not that it's

24   relevant.

25             THE COURT:  I'm just wondering how it cuts, sir,

1   because I suppose the argument could be made that if he didn't

2   know about the claim until after the mediation, that's an

3   awfully long period of time.  It's a question of what is

4   worse -- knowing the claim and sitting on it for months and

5   months and months or not knowing about it until very recently.

6   But I understand your point.  Let me hear from him and then

7   I'll let each of you speak.

8        So, Mr. Koerner, please continue.

9        MR. KOERNER:  Certainly the urgency of including the

10  city law claims was fully realized by me at the mediation.

11  That's when I fully realized it.

12       THE COURT:  I think it's safe to say, sir, that at the

13  time you filed the complaint in this case, which I realize is

14  the second complaint in this particular set of events, you were

15  unaware.

16       MR. KOERNER:  Correct.

17       THE COURT:  And when did you know?

18       MR. KOERNER:  I became aware of it, I thought it was

19  at the mediation.  If it wasn't, it was leading up to the

20  mediation.  Whether it was something that opposing counsel had

21  said that there would be a motion for summary judgment and -- I

22  can't remember exactly how I became aware of it, but certainly

23  at the mediation is when, you know, the magistrate judge

24  impressed upon me that this was a serious problem and that you

25  may not be allowing me to amend the complaint.

1        THE COURT:  Okay.  I'm going to hear from them.  But

2   it is your motion; I'll let you speak last.

3        So, Ms. Gould, Mr. Ettenger, whoever wishes to speak

4   to this first.

5        MR. ETTENGER:  Your Honor, I think you pinpointed it.

6   Mr. Koerner has acknowledged the issue and the issue really is

7   is law office failure good cause regarding the case management

8   order.  And he's going to have to make that motion and put in

9   relevant case law as to what good cause is.

10        THE COURT:  I'm stopping you now because this is the

11   motion, is it not?  It's styled to me as plaintiff's letter

12   motion for leave to file an amended complaint.  This is the

13   motion.  There's nothing else.

14        MR. ETTENGER:  My understanding is this was a

15   premotion conference regarding motions.

16        THE COURT:  On your summary judgment motions.

17        MR. ETTENGER:  Well, Judge, then the bottom line is

18   law office failure is not good cause.  If it was, in every case

19   where there was an issue on a case management order regarding

20   amendment, the attorney would simply say I didn't know and then

21   the Rule 16 would be irrelevant and then they would be

22   permitted to amend and they would never have an issue.

23        So, unfortunately, in this case, he did make the

24   error.  His client chooses his own counsel; he's going to have

25   to live with it.  And if you disagree, you disagree, but that

1    is what the law states.

2              THE COURT:  Okay.  What am I to do.  I think I

3    understand better what he's saying which is he's not saying you

4    guys estopped him or enticed him or cajoled him into not

5    bringing the claim.  He is saying, however, that you told him

6    all along that there was going to be a settlement.

7              MR. ETTENGER:  Your Honor, we were actually in fact

8    here at the initial discovery conference where Mr. Koerner

9    wanted to have a conference and Ms. Gould said I'm not going to

10   a settlement conference.  We agreed after discovery we would

11   revisit the issue.  After discovery, we agreed to try to use

12   the services of the magistrate.  In fact, we had individual

13   lengthy discussions with the magistrate about settlement.  And

14   the magistrate said I'm not optimistic, but let's come in and

15   we'll give it a shot.  The magistrate worked hard.

16   Unfortunately, there was not a meeting of the minds regarding

17   settlement.

18             But no promises were made we were going to settle or

19   an offer was going to be made.  And it is regrettable that we

20   went to a mediation and there wasn't an offer made, which I

21   can't get into the specifics of why.  It's not relevant to my

22   client, but there are issues.

23             But the reality is one has nothing to do with the

24   other.  We litigated the case.  We went through discovery.  We

25   went through a mediation.  It failed.  Thereafter, we wrote our

1    motions to the Court requesting summary judgment and

2    Mr. Koerner asked to amend his pleading.  One should have

3    nothing to do with the other.  He was never led to believe that

4    we were going to settle and, therefore, he didn't have to take

5    the necessary steps to protect his pleadings.  It's just not

6    the case.

7              THE COURT:  I think what he's saying is that this is a

8    case where justice calls out for this amendment to be allowed

9    because he might have done it sooner.  I'm going to let him

10   speak last.  He'll tell me what I'm misperceiving.  I don't

11   think he's saying that you guys actively misled him.  I think

12   he's just saying he had an understanding; that understanding

13   was not borne out.

14             MR. ETTENGER:  I think what happened, Judge, is that

15   he found out through whatever third party means on August 13 or

16   14 that he did not properly plead a cause of action.  And as

17   soon as he found that out, he notified the parties and asked

18   for permission to amend, which we said no.  And then within a

19   week we had a mediation, it didn't settle, and he went to the

20   Court and requested leave to amend.  It's not like he found out

21   six months ago but chose not to notify the Court.  He didn't

22   find out until August, which is beyond the date set in the case

23   management order.  I don't believe that's in dispute.

24             I don't believe good cause and the interest of justice

25   are the same thing.  There is a standard for good cause, and

EA2LBRIC                          Conference

1    law office failure does not meet that standard.

2              THE COURT:  Okay.  Ms. Gould, do you have anything you

3    wish to add?

4              MS. GOULD:  Not much except I feel I need to go on the

5    record that there was -- I know you've said that Mr. Koerner is

6    not saying that we led him on.  But the reality is there was

7    never a point in time when I on behalf of my client made any

8    promise to Mr. Koerner.  There was never a point in time -- and

9    Mr. Ettenger is correct.  We were here for the Rule 16

10   conference.  We had to fill in the little blanks about

11   settlement discussions.  You asked those questions.  And at

12   that time I said we needed to go through discovery.  We needed

13   to see what his case was about.

14             But I never had authority to tell him that there would

15   be a settlement.  I wouldn't do it unless I had authority to do

16   that.  I was hopeful -- because I wouldn't have taken Judge

17   Freeman's time and counsel's time and my time -- that a

18   resolution could be had, not because I think there's a great

19   case on plaintiff's side, but because the vicissitudes of

20   litigation are what they are and I know what they are.  So I

21   was hopeful that with Judge Freeman's auspices that perhaps

22   some resolution could be achieved.  It wasn't.

23             The letter regarding the amendment was written on the

24   eve of the mediation.  We discussed it at the mediation.  So it

25   was out there at that time.  When he became aware of that

EA2LBRIC                          Conference

1    before, I don't know.

2                THE COURT:  Okay.

3                MS. GOULD:  I have other reasons why I don't think he

4    should be permitted to amend which I also addressed in my

5    letter --

6                THE COURT:  Which I have on the screen right now.

7                MS. GOULD:  -- which is futility.  No. 1, he's seeking

8    leave to amend and add two claims.  One is the violation of New

9    York City Human Rights Law, which we've discussed; I want to go

10   back to for a second.  The other is a state law claim of

11   assault.  And as I set forth in my letter, I directly asked --

12   I know what the record is and the record is that there was no

13   physical anything between his client and Ms. Alderman after the

14   year 2007.

15               THE COURT:  Okay.  I just wanted to be clear.  I

16   understand there to have been a fair amount of contact before

17   that, but yes.

18               MS. GOULD:  Not a fair amount -- two occasions of

19   three sexually related activities, for lack of a better word.

20   But under New York law, there's a statute of limitations for

21   assault and that's one year.  So I don't see how he could be

22   permitted to add that claim today in 2014.  To me that's

23   futile.

24               I also indicated to the Court with regard to the claim

25   under the Human Rights Law, and it depends on how the Court

EA2LBRIC                     Conference

1   wants to deal with that, that the Human Rights Law defines an

2   employer as four or more employees in the same way that the New

3   York State Human Rights Law defines that.  And we believe that

4   both with respect to the L.P., Thermald, and with respect to

5   our client, Doreen Alderman, that the payroll records will

6   establish that neither one had four or more employees during

7   the relevant time frame.

8            THE COURT:  Ms. Gould, let me stop you for a moment,

9   please.  Ms. Alderman, did she have any employees?

10           MS. GOULD:  No.  She's a principal of the partnership.

11           THE COURT:  Okay.

12           MS. GOULD:  I don't want to suggest anything, but

13   she's a principal of the partnership.

14           THE COURT:  And realize, please, that I do not have

15   the deposition transcripts that you all have.

16           MS. GOULD:  Oh, yes.

17           THE COURT:  On the issue of futility, I don't feel

18   comfortable even really opining.

19           MS. GOULD:  I understand.

20           THE COURT:  While I'd love to take counsel's say-so on

21   either side, I cannot.  But I do want to understand the

22   argument.  So Ms. Alderman by your accounting has no employees.

23           MS. GOULD:  She has no employees.  I don't feel

24   comfortable putting out there -- there are lots of theories

25   under state law that one could bring someone in.  I don't think

```
 1    I need to be sharing my thoughts about that.  But my position
 2    is she has no employees.
 3              THE COURT:  I just want your position.
 4              MS. GOULD:  That's my position.
 5              THE COURT:  And what is Thermald's position on number
 6    of employees it had during the relevant time period?
 7              MS. GOULD:  The issue is, and I'm an officer of the
 8    court so I'm putting it out there on the record, that unlike
 9    federal law, which talks about, whatever, 15 or more employees,
10    for each working day of 20 weeks in this or the prior year,
11    under New York law, there is nothing that defines the relevant
12    time frame.  And I've done the research under New York City
13    Human Rights Law.  Maybe I'll come upon something; so far I
14    haven't seen it.
15              But if, as many courts, including this Court, has
16    said, if the New York State law is analyzed in the same way as
17    federal law, then by that definition, and it's taken some work
18    because payroll records are not always as straightforward as
19    you think are, but I believe and I will establish that there
20    was no year, going as broad as from 2007 to 2013 when Mr. Britt
21    was terminated, that there's no year in which there were 20
22    weeks in which every day of those 20 weeks there were four or
23    more employees of Thermald.  I would be able to establish that.
24    So that was my position and I take that position vis-a-vis
25    Section 296.  And I would take that position if the Court were
```

 1     going to be allowing the amendment under the Human Rights Law.

 2              THE COURT:  I understand that.  Before you sit down

 3     let me ask you this.  I do want to hear from Mr. Koerner

 4     because it is his application and he gets to speak last.  But

 5     on this issue and on the summary judgment issue we're going to

 6     talk about in a few minutes, I'm going to tell you something

 7     that you all already know.  It costs money to file motions.

 8              MS. GOULD:  We know that.

 9              THE COURT:  And your clients would prefer to spend the

10     money on you than on settlement?  That's their prerogative.  I

11     just want to know.

12              MS. GOULD:  I'm not all that comfortable having this

13     conversation on the record.  But the answer is that you can see

14     how old I look.  I've been practicing law for 40 years.  I know

15     how expensive litigation is -- and it's a public record so I

16     can say it -- I know how expensive litigation is.  And I can

17     certainly tell the Court that I'd like to think of myself as a

18     responsible attorney, and all of that information has been

19     imparted responsibly to my client.  And the answer is yes, at

20     this point in time that is her preference.  And the reason is

21     very simple from her point of view, and I'm sure she wishes she

22     were here to tell you herself.

23              THE COURT:  I don't need to know.

24              MS. GOULD:  The reason is she doesn't believe she did

25     anything wrong and that's her position.

EA2LBRIC                    Conference

1          THE COURT:  Okay.  That's fine.  I have people who

2    have stood on principles and spent an awful lot of money and

3    been vindicated and folks who have lost and you have as well.

4    That's fine.  I just want to know before we embark on a

5    continuation of these adventures together that I got my

6    thoughts out there.

7          MS. GOULD:  Thank you.

8          THE COURT:  That is the answer.

9          Mr. Koerner, let me hear from you.

10          MR. KOERNER:  The one other thing I would just say is

11    when Ms. Gould and Mr. Ettenger were saying there was never any

12    promise of a settlement, that's true.  However, there were

13    multiple occasions where I had a conversation with you where

14    you said, look, let's go through these depositions and we'll

15    have a third party settle this thing.  And the same thing when

16    you told me, Ms. Gould, where you said my client is taking a

17    no-pay position against my advice.  So I'll just say that.

18          THE COURT:  Hang on one second.  On the first part I

19    guess the commitment sounds like a commitment to revisit things

20    at the end of discovery, which is what people do all the time

21    which is not a commitment to settle, although, yes, you're

22    saying that last point.

23          I suspect his statement -- and we'll settle this

24    thing -- is more aspirational than an actual promise and I

25    don't believe you took it as such.

EA2LBRIC                          Conference

1        The way you just described what Ms. Gould has said,

2    she was unable, is unable to persuade her client to settle --

3        MR. KOERNER:  And the other thing is at this point.

4    It's not like at this point is different.  It's throughout this

5    entire period it's been zero.

6        THE COURT:  Sir, I'm sorry, but how then were you

7    thinking that you were going to be able to settle with her

8    client?  Listen, the first conference in this case was in the

9    robing room here.  She was fairly adamant that this was going

10   to have to be resolved by a trial.  So I'm not sure -- and,

11   again, maybe I don't need to hear the specifics, but I'm not

12   sure what in your dealings with counsel led you to believe that

13   the Alderman/Thermald half could be settled.

14       MR. KOERNER:  I was led to believe that.  But you're

15   right, it's not really pertinent to this other than the fact

16   that I do think the interests of justice do come into play here

17   as far as good cause, as far as, again, as I've said before,

18   there's no prejudice here.  The discovery record, which I know

19   you're not privy to, establishes that the claims that should

20   have been pled were not.

21       I made my application for an amendment.  I don't see

22   how it's going to entail any additional expense or work for the

23   defendants.  They want a trial, so let's have a trial on the

24   valid claims that belong as part of this case.

25       THE COURT:  Okay.  Mr. Koerner, I said I was going to

1   let you speak last, but you just raised a question I want to

2   ask of either Ms. Gould or Mr. Ettenger.

3          I want to understand what prejudice you identify here

4   specifically.  Is prejudice as the case law defines it the need

5   for continued discovery, the need for the reopening of

6   discovery?  Is prejudice the fact your summary judgment motion

7   will now have five parts to it or six parts to it rather than

8   four?  I would just like to understand are you taking the

9   position, counsel, that there is prejudice to your clients,

10  and, if so, what do you identify the prejudice is, or are you

11  simply saying that Mr. Koerner has not established good cause

12  and that I need not undertake the prejudice analysis?

13         MS. GOULD:  The latter.  And I'm an officer of the

14  court so I understand what the law talks about in terms of

15  prejudice.  And, no, I'm not suggesting that we need to reopen

16  discovery.  Discovery has been had.  The facts, the same facts

17  of which Mr. Koerner was aware on day one are now, if he is

18  permitted to amend, going to be the facts upon which that

19  additional claim or claims would be based.  And so I don't

20  identify prejudice.

21         My reading of the law as an officer the court is that

22  notwithstanding that the city Human Rights Law provides for

23  different forms of relief, including punitive damages,

24  including attorneys' fees, which are not provided by the New

25  York State Human Rights Law, that the case law suggests that

EA2LBRIC                    Conference

1    that in and of itself is not prejudice.  And I have to put that

2    out there because that's my reading of the cases.

3           I'm suggesting and I think Mr. Ettenger has suggested

4    that the Court should be looking at Rule 16 in addition to Rule

5    15, of course, but that Mr. Koerner simply has not established

6    good cause and that that is the analysis that the Court should

7    engage in at this point in time and he's clearly under settled

8    case law not established good cause.

9           THE COURT:  Okay.  Mr. Ettenger.

10          MR. ETTENGER:  I don't need to address that issue.

11   Because we are on the record, I believe I need to address two

12   issues briefly.  One is at no point did I ever say nor could I

13   say we will settle this case after discovery.  I certainly

14   could not because I'm a bit player.

15          THE COURT:  I'm not worried about that.

16          MR. ETTENGER:  The second issue is because it is on

17   the record -- there's a proceeding -- that any discussion

18   regarding settlement has to be stricken because these are all

19   prejudicial if the case proceeds in any manner.  They shouldn't

20   be part of the record.

21          THE COURT:  Let me understand what you mean by that,

22   sir.  I'm not striking it.  I've heard it.  It's on the record.

23   This is not coming out at trial if there is a trial in this

24   case.

25          MR. ETTENGER:  That's all I need to say then.

1    THE COURT:  I don't think anybody but the folks in

2  this room are going to pay attention to this transcript.

3    MR. ETTENGER:  Good.  That's all I needed to say.

4    MS. GOULD:  And one more sentence, your Honor, and I

5  don't want to beat the dead horse, but the issue, I've never

6  reported to Mr. Koerner that my client is refusing to take my

7  advice to settle.  That is never what I said to him.  That's

8  all.

9    THE COURT:  That's fine.  And, Mr. Koerner, again, it

10 is your application.  I do want to give you the last word, sir.

11   MR. KOERNER:  Thank you, your Honor.  I have nothing

12 further.

13   THE COURT:  Okay.  Thank you.  Let me go off the

14 record for a second.

15   (Pause)

16   THE COURT:  All right.  Thank you very much for your

17 patience, and thank you for very thoughtful oral argument

18 today.

19   I'm not going to allow the amendment of the complaint

20 because this is governed by Rule 15 and Rule 16.  There is a

21 showing or a requirement of good cause, and I just don't think

22 it's been shown here.

23   What I understand is that sometime after the 60 days

24 that were specified in the case management plan, you realized

25 that you had this complaint and wanted to bring it.  I don't

EA2LBRIC                    Conference

1   see that there was any active or even passive misleading by

2   defense counsel that caused you not to bring it.  And I think

3   it is too late in the day.  It's seven months after the case

4   management plan was filed.  So, I will not allow it.

5          I am thoughtful of and have thought about the cases on

6   pages 3 and 4 of Ms. Gould's letter to me regarding Rule 16 and

7   attorney oversight.  I'm not getting into the futility issue.

8   I don't think it's appropriate for me to do that.  So I can't

9   say whether it's futile or not because I don't have the

10  transcript and I certainly don't have in front of me the

11  payroll records and the relevant legal standards to decide

12  whether or not those particular thresholds have been met.  So

13  it is unfortunate, but that is in fact what the law provides.

14  I'm not going to vary from it.

15          Let me then understand, the next step is the summary

16  judgment motions.  So at that point it is now defense counsel

17  who are bringing the motions.  So we're here.  My next case is

18  outside in the hallway.  Let me hear from you about what you

19  believe, other than the written stuff that I've seen, if there

20  is anything you want to call to my attention about these

21  summary judgment applications.

22          Mr. Ettenger.

23          MR. ETTENGER:  I will stand by my written letter

24  unless you have any questions for me, your Honor.

25          THE COURT:  I do not, sir.

EA2LBRIC                    Conference

```
1          I want to understand, Ms. Gould, are you arguing that

2     his motion actually doesn't work?  I saw some letter --

3          MS. GOULD:  I'm arguing -- we have cross claims

4     against each other.  There's a property management agreement.

5     His client is still managing my client's property, but there's

6     a property management agreement.  And it's my read of the

7     agreement that while my client, if it's determined there are

8     FLSA claims here and New York State Labor Law overtime claims

9     here, if it were to be determined that our client actually

10    improperly paid Mr. Britt, even though his client took care of

11    the payment, they might be liable for the payment itself.  And

12    my position is that if that happens, that there was willfulness

13    and gross negligence and that any liquidated damages, any

14    penalty, any attorneys' fees should be their responsibility.

15         So my argument is there's going to be a question of

16    fact on the provisions -- until we have a determination,

17    there's going to be a question of fact as to whether that

18    failure on their part was gross negligence or willful.  And so,

19    therefore, I don't see the motion.

20         THE COURT:  All right.  But this is interesting

21    because I have not yet had a case where the parties on the same

22    side of the "V" are fighting with each other.  So you'll be

23    moving for summary judgment with respect to?

24         MS. GOULD:  I wasn't going to be moving.  He's moving

25    and I'm opposing.
```

EA2LBRIC                          Conference

1              THE COURT:  You're not moving at all on behalf of your

2       client.

3              MR. ETTENGER:  No, because I think there's going to be

4       a question of fact on that issue.

5              THE COURT:  So you'll be moving, Mr. Ettenger, for

6       summary judgment, and you will get two oppositions.

7              MR. ETTENGER:  Well, your Honor, no.  There's

8       different oppositions.  I'm moving on Title 7 and executive law

9       against the plaintiff.  Plaintiff will oppose that.  I'm moving

10      under the FLSA against the plaintiff saying he does not meet

11      the standard to prove that he worked overtime, which the

12      plaintiff will oppose.  And then I'm saying if your Honor

13      determines that he has a valid FLSA claim, I have contractual

14      indemnity from the codefendant, which they will oppose.  So

15      they will oppose part three, and he will oppose parts one and

16      two.  It is what it is, your Honor, but I obviously believe the

17      indemnity provision applies.  Ms. Gould says if you're in,

18      you're in with me on that claim.

19             THE COURT:  And, Ms. Gould, you're not moving at all

20      for summary judgment?

21             MS. GOULD:  I am.  Not with regard to Mr. Ettenger's

22      clients; I'm moving with regard to plaintiff.

23             THE COURT:  Okay.

24             MS. GOULD:  That's the letter that you don't have that

25      I just gave you a copy of on the grounds that neither of my

1   clients is an employer under New York State law and on the

2   grounds that under New York Labor Law, a live-in, he calls

3   himself, whatever he calls a superintendent.  The definition of

4   his job is he's a live-in janitor, and there's an exemption

5   under state law for overtime for that job.  And I'm going to

6   move under FLSA on two grounds -- one is he can't prove when he

7   works.  He claimed he worked overtime.  That's his claim.

8           THE COURT:  You don't mean what years.  You mean in a

9   given day.

10          MS. GOULD:  The statute is the statute, and he's only

11  sought relief from August of 2011 on.  He hasn't gone back six

12  years under the Labor Law, and he hasn't gone back the two

13  years or three years under FLSA.  We asked those questions.

14  That's what's been pled.  He made a claim to the New York State

15  Department of Labor which was closed when he asserted this

16  claim.

17          THE COURT:  I'm going to ask you to slow down a little

18  bit.

19          MS. GOULD:  I'm sorry.  And the other issue from our

20  point of view aside from the proof is that I believe there's

21  case law under the FLSA for the proposition that if there was a

22  clear mutual understanding of how someone was going to be paid,

23  then that is how someone is going to be paid.  In this case

24  there was an employment agreement.  And I think the letter that

25  you don't have -- we will ECF it to you later or tomorrow --

EA2LBRIC                    Conference

1    indicates that everyone agrees that there was a signed

2    agreement, but no one had every page of that agreement.  We

3    have a draft of that agreement.

4           But the agreement that we believe was signed that we

5    have a draft of basically says this is how you're going to be

6    paid.  This is your total compensation.  And he was paid

7    weekly.  He was paid to do extra work, and there's no doubt

8    that he was paid to do that.  And he can't prove when he did

9    work or he didn't work.

10          So I'm going to be moving on all of those grounds

11   under the FLSA as well.

12          THE COURT:  Okay.  Thank you.

13          Now, Mr. Koerner, for you and for me both there have

14   been some arguments made today that we were not aware of when

15   we walked into court today because I don't think you received

16   Ms. Gould's letter that she's just now been referring to.  Do

17   you want to speak at this time to either Wavecrest's

18   application or to her application?

19          MR. KOERNER:  They're going to make their motion.  I

20   can't imagine you're not going to let them make their motion.

21          THE COURT:  I sort of have to let them.  I guess what

22   this experience sometimes does is it points out the

23   vulnerabilities of the motion.  So I have had movants change

24   the scope of their motion in response to things that their

25   adversary has said at these conferences.  You guys may just be

1   at such loggerheads that there's nothing you can say to change

2   their minds.  My purpose for this conference is because I have

3   actually been able to persuade parties to narrow or to

4   eliminate certain claims in summary judgment because they

5   realize through this discussion that they will not be viable.

6           So with respect to the issue, sir, I'm just looking at

7   Wavecrest has a view that they're only on the hook or not on

8   the hook because of this indemnity agreement.  Do you have a

9   view about Wavecrest, how are they still in the case?

10          MR. KOERNER:  I'm going to basically rely on

11  codefendants and say they're still in the case and also that

12  they knew or should have known that this sexual harassment was

13  going on.

14          THE COURT:  Did you depose individuals from Wavecrest,

15  sir?

16          MR. KOERNER:  Yes.

17          THE COURT:  And were the individuals from Wavecrest,

18  to the extent you can recall the deposition testimony, were

19  they in any way aware of the nature of the relationship between

20  Ms. Alderman and your client?

21          MR. KOERNER:  He denies he was aware of the

22  relationship.

23          THE COURT:  I see.  Did you see documents or other

24  materials indicating that he could not have been unaware of it?

25  Or I'll try and ask that question a little better.

1          MR. KOERNER:  There was testimony essentially that he

2     said when he learned that Mr. Britt was pursuing sexual

3     harassment claims, he said, oh, that makes sense.  Now it all

4     makes sense that Ms. Alderman was treating you that way.  So it

5     leads me to believe that, yeah, he did have some knowledge

6     about what was going on.

7          THE COURT:  You're intuiting from that comment that he

8     knew all along about the relationship?

9          MR. KOERNER:  That he knew that Ms. Alderman was

10    treating Mr. Britt improperly, yeah.

11         THE COURT:  Because that comment could be interpreted

12    in many ways.  And I suppose it could be interpreted to mean

13    that statements made by Mr. Britt in connection with this

14    litigation now makes sense to him now that he hears what the

15    allegations are, but not that suddenly the light went on and

16    things about which he knew years and years ago --

17         MR. KOERNER:  That's true.  I think it's a factual

18    question as far as whether or not and what they knew when.

19         THE COURT:  I see.  So your position is as to the

20    Wavecrest representative they either knew based on the

21    statement you just identified for me, or they should have known

22    because the conduct was such that they should have known.

23         MR. KOERNER:  Yes.

24         THE COURT:  Okay.  Let me understand a little bit more

25    your responses to Ms. Gould's arguments.  For example, you

1    heard Ms. Gould and me talking earlier about number of

2    employees.

3            MR. KOERNER:  Just from what Ms. Gould said today,

4    obviously, there is some uncertainty as to at various times how

5    many employees there actually were.  So, again, I think that's

6    a factual issue which, she wants to make the motion, she can

7    make the motion.

8            THE COURT:  Do you have a view, sir, as to whether the

9    standard that should be used for identifying employees under

10   New York State law is that that's set forth in Title 7 or some

11   other standard?

12           MR. KOERNER:  I don't know that.  I'd have to do some

13   research on that.

14           THE COURT:  Okay.  And then on the other claims, what

15   I heard you say earlier, sir, was that your client had very

16   strong recollections of what had happened, whereas Ms. Alderman

17   seemed to recall nothing.

18           MR. KOERNER:  That's exactly -- it's outrageous, yeah,

19   what happened.

20           THE COURT:  I can't opine on that, sir.  But your view

21   is that your client has presented enough to satisfy the various

22   claims that have been brought and that she has not identified

23   or has not basically presented evidence in her deposition

24   testimony or in any of the documents that she has produced that

25   would warrant summary judgment in her favor.

1          MR. KOERNER:  Correct.

2          THE COURT:  Okay.  Anything else you want to tell me

3    in response to what they're saying?

4          MR. KOERNER:  No.

5          THE COURT:  All right.  This is an unusual

6    circumstance, Ms. Gould, in which I can't tell you that some of

7    your claims have more or less success.  Same, Mr. Ettenger,

8    with you -- I don't know.  But I do know you wish to make them

9    and, sadly, in my job as judge, I don't get to tell you you

10   can't.  The only ability I have is to deny where appropriate

11   and grant where appropriate.

12         So let's then talk.  Do I understand the parties would

13   be filing simultaneous motions?

14         MR. ETTENGER:  I think the procedure would be we

15   should file our motions on the same day and then give

16   Mr. Koerner an opportunity to oppose both motions and give

17   Ms. Gould an opportunity to oppose my motion on the cross claim

18   on the same day and then all parties should give the same day

19   for reply.  Whatever schedule you decide or the parties decide

20   is fine with me.

21         THE COURT:  All right.  It seems to me -- I don't

22   know.  Were you thinking about 30 days or so for your motions?

23         MR. ETTENGER:  I think we agreed we were thinking more

24   like 45 and then 20 or 45, 25, and ten, maybe.

25         THE COURT:  I am sensitive to the fact that

EA2LBRIC                    Conference

 1   Mr. Koerner is one man responding to two motions.  So whatever

 2   time you folks need, if you were going to say 30, I was going

 3   to give him 45.  If you yourselves are taking 45, maybe 45

 4   would be enough.  Maybe 60 would be enough.  And I don't want a

 5   whole lot of time on reply, candidly, but I'm saying he's

 6   responding to two motions at once.

 7            MR. ETTENGER:  Forty, 60, ten?

 8            MS. GOULD:  Can I respectfully -- this is just my

 9   schedule.  I have another one sitting on my desk.  I would like

10   45 days.  And whatever Mr. Koerner wants is fine with me.  And

11   reply, in my opinion, my reply is going to be very short.

12            THE COURT:  Do you understand, Ms. Gould, that you

13   would be within whatever second period I imposed because you

14   would be responding?

15            MS. GOULD:  I do.

16            THE COURT:  So you'd be filing three briefs in this

17   matter.

18            MS. GOULD:  I get it.

19            THE COURT:  Mr. Koerner, does it make sense, if they

20   need 45 days because of their schedules, is 60 enough for you

21   to respond?

22            MR. KOERNER:  That's fine.

23            THE COURT:  And then I'll give two weeks afterwards.

24   And these are all approximate days.  I'm going to look at my

25   calendar and set up a scheduling order.

1          To the folks at the back table, I can't see a need why

2    you're going to need more than 25 pages for the briefing.

3          So, Mr. Koerner, does it make sense to file one

4    response to both?

5          MR. KOERNER:  Probably.

6          THE COURT:  So I guess you'll have up to 50, but 40 is

7    better.

8          MR. KOERNER:  It's going to be well below 50, I assure

9    you.

10          THE COURT:  All right.  I will ask the parties, and I

11    am visiting upon you the sins of prior counsel who have

12    appeared before me, please read Rule 56 and local Rule 56.1 and

13    my rules of individual practice.  They're annoying, but they're

14    actually quite helpful for me.  If you're going to do a Rule

15    56.1 statement, please cite to something and just don't have

16    allegations that are kind of there.  And if you're going to

17    respond to it, please keep the same numbering because you'd be

18    amazed at how lesser counsel have responded to these things.

19    It makes it very confusing for me.  But I will trust that you

20    all will look at those rules and certainly you'll call out to

21    me if you have they questions.

22          MR. ETTENGER:  Your Honor, we do have a significant

23    transcript.  I don't want a lot of paper.  Should we coordinate

24    the exhibits, one of us files the exhibits rather than you

25    getting two sets of everything?

EA2LBRIC                    Conference

```
1          THE COURT:  Yeah, if you can do that.

2          Mr. Koerner, can we let them sort of take the laboring

3  oar on the appendix in this case?

4          MR. KOERNER:  Sure.

5          THE COURT:  And then that makes the most sense because

6  I don't think you should duplicate efforts.  If the parties can

7  speak beforehand and even agree on what exhibits should be

8  included, that would be useful.  Also, as you'll see in my

9  rules -- you'll tell me if this isn't there -- it is very

10  helpful for me to have all of the deposition transcripts.

11          MS. GOULD:  I thought that was in your rules.  Most

12  judges don't want that.  I think it's a lot easier.  The fact

13  that you want that, we should do it.

14          THE COURT:  We actually read them, so, yes.

15          MR. ETTENGER:  Thank you, your Honor.

16          THE COURT:  Anything else from the parties?

17          MR. ETTENGER:  No, your Honor.

18          THE COURT:  Thank you.  Sorry we kept you guys over.

19  We'll get an order out later today.  Please get a copy of the

20  transcript so I can see what we talked about today.

21                              oOo

22

23

24

25
```