UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
RONALD BRITT,

                Plaintiff,                         13 Civ. 8289 (KPF)

-against-

THERMALD REALTY I, LP., d/b/a
THERMALD REALTY ASSOCIATES I,
LP. and THERMALD REALTY CORP.,
THE WAVECREST MANAGEMENT TEAM,
LTD. d/b/a WAVECREST MANAGEMENT
GROUP, LLC and WAVECREST EQUITIES,
LLC, and DOREEN ALDERMAN,

                Defendants.
-------------------------------------------------------X

# *MEMORANDUM OF LAW ON BEHALF OF DEFENDANTS THERMALD REALTY ASSOCIATES, I, LP AND DOREEN ALDERMAN IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT*

GOULD & BERG, LLP
*Attorneys for Defendants Thermald*
*Realty Associates I, LP and*
*Doreen Alderman*
222 Bloomingdale Road
White Plains, New York 10605
(914) 397-1050

# Table of Contents

**Page**

Table of Authorities ……………...…………………………………………………ii

Preliminary Statement

INTRODUCTION: THE PARTIES…………......……………….………….…….…...1

    BRITT AND ALDERMAN HAD SEX A TOTAL OF THREET TIMES ON TWO
    OCCASIONS IN 2007; BRITT CONTINUED TO WORK FOR
    THERMALD/WAVECREST FOR ANOTHER 5 ½ YEARS………………………..3

    THERE WERE LEGITIMATE BUSINESS REASONS FOR THE TERMINATION
    OF BRITT – AND ZHENG…………………………………………………………..4

    DURING THE COURSE OF HIS EMPLOYMENT, BRITT MADE NO
    COMPLAINT OF SEXUAL HARASSMENT TO ANY GOVERNMENT AGENCY
    OR TO WAVECREST AND ONLY MADE SUCH A COMPLAINT AFTER HE
    WAS TERMINATED……………………………………………………...…………5

    THE LITIGATION………………………………………………...………...6

The Standard for Summary Judgment………………….………………………………7

ARGUMENT

POINT I

A CLAIM FOR ANY ACT WHICH OCCURRED BEFORE NOVEMBER 20, 2010 IS
TIME BARRED……………………………………………………………...…8

POINT II

SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THERMALD IS NOT
AN "EMPLOYER" AS DEFINED BY THE NEW YORK STATE HUMAN RIGHTS
LAW AND IT HAS NEVER BEEN ALLEGED THAT ALDERMAN WAS BRITT'S
EMPLOYER ………………………………………………………….……...9

POINT III

VIEWING THE RECORD MOST FAVORABLY TO THE PLAINTIFF, THERE IS
INSUFFICIENT EVIDENCE FROM A REASONABLE JURY COULD FIND IN
FAVOR OF PLAINTIFF ON ANY THEORY OF SEXUAL HARASSMENT............12

     A. Quid Pro Quo...............................................................................12

     B. Hostile Work Environment.........................................................15

     C. Retaliation.................................................................................16


CONCLUSION.................................................................................18

# TABLE OF AUTHORITIES

**Page**

**Statutes**

Section 296 of the New York State Executive law..............................6, 7, 9, 11, 12, 16

Section 292(5) of the New York State Human Rights Law................................7, 9

C.P.L.R § 214(2); ...........................................................................8, 9, 11

Title VII, 42 U.S.C.§ 2000e ...........................................................6, 11, 17

**Cases**

Adeniji v. Admin. for Children Servs., NYC, 43 F. Supp. 2d 407 (S.D.N.Y.)..............14

Adeniji v. Admin. For Children's Servs., 201 F.3d 430 (2d Cir. 1999). ....................14

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986)...............................................................................................7

Carrero v. New York City Hous. Auth., 890 F.2d 569 (2d Cir.1989).......................13

Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)............7

Clauberg v. State, 95 A.D.3d 1385, N.Y.S.2d 653 (3d Dept., 2012); ........................17

Cordiano v. Metacon Gun Club, 575 F.3d 199 (2d Cir.2009)................................8

Corrigan v. Labrum & Doak, 1997 WL 76524 (S.D.N.Y.)...................................13

Corrigan v. Labrum & Doak, 95 Civ. 6471, 1997 WL 76524 (S.D.N.Y. Feb. 21,

1997)..............................................................................................14

Cosgrove v. Fed. Home Loan Bank of New York, 1999 WL 163218 (S.D.N.Y.)..........8

Delaware State Coll. v. Ricks, 449 U.S. 250, 101 S.Ct. 498 (1980).........................9

Distasio v. Perkin Elmer Corp., 157 F.3d 55 (2d Cir. 1998).................................7

EEOC v. National Cleaning Contractors, 1997 WL 811494 (S.D.N.Y.)....................13

Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295 (2004)……………………………17

Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295 n. 3, 786 N.Y.S.2d 382 N.E.2d 998

(2004).……………………………………………………………………………………11

Galabya v. New York City Bd. of Educ., 202 F.3d 636 (2d Cir.2000…………………12

Gallagher v. Delaney, 139 F.3d 338 (2d Cir.1998)………………………………...13

Gallo v. Prudential Residential Servs., Ltd. Partnership, 22 F.3d 1219 (2d Cir.1994)…...8

Gibson v. Jacob K. Javits Convention Ctr., 1998 WL 132796 (S.D.N.Y.)……………13

Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14 (2d Cir.1995……………7

Gostanian v. Bendel, 1997 WL 214966 (S.D.N.Y.);………………………………13

Grovesteen v. New York State Pub. Employees Fed'n, AFL-CIO, 83 A.D.3d 1332, 921

N.Y.S.2d 700 (3d Dept., 2011)………………………………………………………17

Gutierrez v. Henoch, 998 F.Supp. 329 (S.D.N.Y.1998);………………………………..13

Karibian v. Columbia Univ., 14 F.3d 773 (2d Cir.), cert. denied, 512 U.S. 1213, 114 S.Ct.

2693, 129 L.Ed.2d 824 (1994))………………………………………………………13

Krassner v. Episcopal Diocese of Long Island 431 F.Supp.2d 320 (EDNY 2006)…..9, 11

Magnoni v. Smith & Laquercia, LLP, No. 07–CV–9875(VM), 2010 WL 1253178

(S.D.N.Y)……………………………………………………………………………8

McDonnell Douglas Corp v. Green, 411 U.S. 802 (1973)………………………………12

Melman v. Montefiore Medical Center, 98 A.D.3d 107 (1st Dept., 2012)……………12

Miccio v. Fits Sys., Inc., 25 A.D.3d 439, N.Y.S.2d 13 (1st Dep't 2006);……………..8

Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293 N.Y.S.2d 232 N.E.2d 86 (1983)…..8

Parker v. Columbia Pictures Indus., 204 F.3d 326 (2d Cir.2000)………………………12

Pell v. Trustees of Columbia Univ.,1998 WL 19989 (S.D.N.Y.)…………………………13

iv

Potenec v. Morgan Guar. Trust Co., 83 Civ. 4764, 1985 WL 2049 (S.D.N.Y. July 24, 1985)……………………………………………………………………………14

Pryor v. Jaffe & Asher, LLP, 992 F. Supp. 2d 252 (S.D.N.Y. 2014)……………..…11, 15

Reed v. A.W. Lawrence & Co., 95 F.3d 1170 (2d Cir.1996);……………………..……14

Roddini v. City Univ. of New York, 2003 WL 435981 (2003)……………………………9

Stout v. Town of Tonawanda Police Dep't,  2011 WL 1260049 (W.D.N.Y. )………..…12

Suriel v. Dominican Republic Educ. & Mentoring Project, Inc., 85 A.D.3d 1464, N.Y.S.2d 198 (3rd Dept.,  2011)…………………………………………………………17

Sykes v. Mt. Sinai Med. Ctr., 937 F.Supp. 270, 276 n. 9 (S.D.N.Y.1996)………………14

Tomka v. Seiler Corp., 66 F.3d 1295 (2d Cir.1995);……………………………………14

Vandewater v. Canandaigua Nat. Bank, 70 A.D.3d 1434, 893 N.Y.S.2d 916 (4th Dept., 2010)……………………………………………………………………………..…17

Wanamaker v. Columbian Rope Co., 108 F.3d 462 (2d Cir.1997)………………..…12

**Preliminary Statement**

This Memorandum of Law is submitted on behalf of Defendants Thermald Realty Associates I, LP and Doreen Alderman in support of their Motion for Summary Judgment.

**INTRODUCTION: THE PARTIES**

Defendant Thermald Realty Associates I, LP ("Thermald") is and at all times relevant to this action was, a New York limited partnership. Defendant Doreen Alderman ("Alderman") is a resident of California and is and at all times relevant to this action was, a partner in Thermald. At all times relevant to this action, Thermald owned and continues to own three apartment buildings on the lower east side of Manhattan. (the "Thermald Buildings"). Defendants' Rule 56.1 Statement, paras. 1-3; Gould Affidavit in Support of Motion for Summary Judgment, sworn December 2, 2014, ("Gould Affidavit), Exhibit B, Yablonsky Dep., p. 19-20. Gould Affidavit, Exhibit C, Alderman Dep., p. 4; Exhibit D.

In 2004, Thermald entered property management agreements with Defendant Wavecrest Management Team, Ltd, ("Wavecrest") according to the terms of which Wavecrest was to manage the Thermald buildings. Defendants' Rule 56.1 Statement, para. 3, Gould Affidavit, Exhibit B, Yablonsky Dep., p. 86, Deposition Exhibit 24.

On or about January 1, 2007, Wavecrest on behalf of Thermald entered into an employment agreement with the Plaintiff, Ronald Britt, ("Britt" or "Plaintiff") by the terms of which inter alia, Britt was to be a live in "superintendent" responsible on a daily basis for the Thermald buildings, and responsible for responding to emergencies at a fourth building. Defendants' Rule 56.1 Statement, para. 5, Gould Affidavit, Exhibit A, Britt Dep., p. 29.

While no party to this action has disputed that Wavecrest, on behalf of Thermald, and Britt actually executed an employment agreement, neither Britt, nor Wavecrest, nor Alderman have a copy of the full agreement as executed. Defendants' Rule 56.1 Statement, paras. 7, 9

Paragraph 12 of the Complaint in this action makes reference to "Plaintiff's Employment Agreement" and refers to a two page Exhibit A to the Complaint, as copy of that Agreement. (Gould Affidavit, Exhibit A, Britt Dep., p. 30-31, Deposition Exhibit 2). However, a review of that Exhibit A to the Complaint clearly indicates that there are pages missing from the document. Britt's counsel stated on the record at his client's deposition that "there may be pages missing" but what was annexed to the Complaint are all the pages in Plaintiff possession. Gould Affidavit, Exhibit A, Britt Dep., p. 37; Deposition Exhibit 2.

According to Jay Yablonsky, the Director of Property Management for the Wavecrest Defendants, ("Yablonsky") Exhibit A to the Complaint does not appear to be the entirety of the employment agreement entered into and signed by Ronald Britt, but Wavecrest was unable to locate a full copy of the Agreement as actually signed by Britt and Wavecrest. Yablonsky testified that Deposition Exhibit 4, which similarly appeared to be an employment agreement between Britt and Wavecrest as agent for Thermald, was also missing a page. Gould Affidavit Exhibit B, Yablonsky Dep., pp. 92-95. Deposition Exhibit 4.

Yablonsky identified Deposition Exhibit 3 as having been printed from his computer and while not on Wavecrest letterhead, Yablonsky testified that this exhibit contains the sum and substance of the agreement ultimately signed by Britt. That testimony is undisputed. Gould Affidavit, Exhibit B, Yablonsky Dep., p. 94; Deposition Exhibit 3.

According to the terms of the agreement that Britt actually signed, Britt was an employee at will.  Defendants' Rule 56.1 Statement, para. 12, Gould Affidavit, Exhibit B, Yablonsky Dep., p. 97; Deposition Exhibit 3,

According to the agreement that Britt actually signed, Britt received, as part of his compensation, in addition to a weekly sum which increased over time,  a rent-free apartment, payment for certain utilities and reimbursement for the cost of his phone.  Defendants' Rule 56.1 Statement, para. 13, Gould Affidavit, Exhibit B, Yablonsky Dep., pp 96-99; Deposition Exhibit 3.

According to the Agreement Britt actually signed, the compensation set forth in the Agreement was to be "full compensation" for all services performed pursuant the Agreement. Defendants' Rule 56.1 Statement, para. 14, Gould Affidavit, Exhibit B, Yablonsky Dep. p. 99; Deposition Exhibit 3.

According to the Agreement Britt actually signed, he was required to vacate the apartment within 30 days of the termination of his employment with Thermald.  Defendants' Rule 56.1 Statement, para. 15, Gould Affidavit, Exhibit A, Britt Dep., p. 332.

## BRITT AND ALDERMAN HAD SEX A TOTAL OF THREE TIMES ON TWO OCCASIONS IN 2007; BRITT CONTINUED TO WORK FOR THERMALD/WAVECREST FOR ANOTHER 5 ½ YEARS

During 2007, the first year of Britt's employment by Thermald, Britt and Alderman had sexual relations a total of three times on a total of two occasions.  Britt claims he told Ms. Alderman on the second occasion that he no longer wanted to have sex with her. Gould Affidavit Exhibit A, Britt Dep., pp 217-219.

In attempting to pin down the timing of the sexual encounters between Britt and Alderman, Britt testified that the second occasion on which he and Alderman had sex and on which Britt claims to have told Alderman that he no longer wanted to have sex with her occurred prior to Alderman's father's death. Gould Affidavit, Exhibit A, Britt Dep., pp. 310-311

Alderman's father, Therman Alderman, died on October 17, 2007. (Exhibit E). It is thus undisputed that Britt and Alderman did not have sexual relations after October 17. 2007 and that Alderman did not ask Britt for sex after that date. Gould Affidavit, Exhibit A, Britt Dep., pp. 219 -220; 310-311.

Britt continued to work for Thermald for approximately 5 ½ years after his last sexual encounter with Alderman until he and another employee, the porter, Zheng,[1] were terminated on April 30, 2013.  Gould Affidavit, Exhibit A, Britt Dep., pp 325-327; Exhibit B,  Yablonsky Dep., Exhibit C, Alderman Dep., p. 145. Deposition Exhibit 17

During the course of that employment, in addition to the work and compensation  set forth above, Britt performed other "handyman" work on an "as needed" and "as agreed" basis in the Thermald buildings and was paid for that work as agreed upon between him and Wavecrest and/or Thermald. Gould Affidavit, Exhibit A, Britt Dep., pp 133-191; Exhibit B, Yablonsky Dep.,  pp 106-116; Deposition Exhibits 7, 8, 9, 10, 11, 12.

## THERE WERE LEGITIMATE BUSINESS REASONS FOR
## THE TERMINATION OF BRITT – AND ZHENG

Although as set for the at length in Defendants' 56.1 Statement, the perception of Britt's performance played some role in the decision to terminate him, the primary basis for the decision

---

[1] Alderman did not have a sexual relationship with Zheng. Gould Affidavit Exhibit C, Alderman Dep., p. 45.

4

to terminate Britt (and Zheng) was economic. (Gould Affidavit Exhibit B, Yablonsky Dep., p. 39). The decision to outsource the superintendent and porter functions and the ability to rent the apartment previously occupied by Britt brings $34,360 more annually to Thermald's bottom line. Defendants' Rule 56.1 Statement, Paragraphs 25-45; Gould Affidavit, Exhibit B, Yablonsky Dep., pp. 39, 40-44, 55-56, 60, 74 140-144. 183; Exhibit C, Alderman Dep., pp. 124, 215, 250-252, Exhibit F, G, H, I, J; Deposition Exhibits 18, 33 36.

### DURING THE COURSE OF HIS EMPLOYMENT, BRITT MADE NO COMPLAINT OF SEXUAL HARASSMENT TO ANY GOVERNMENT AGENCY OR TO WAVECREST AND ONLY MADE SUCH A COMPLAINT AFTER HE WAS TERMINATED

Prior to the termination his employment, Britt did not complain to any governmental agency- or to Wavecrest about sexual harassment during the course of his employment. Defendants' Rule 56.1 Statement, paras. 56, 58;  Gould Affidavit, Exhibit A, Britt Dep., pp. 231-233;  Exhibit B, Yablonsky Dep., p. 84

It is only now, after his termination that he claims that he did not "consent" to having sex with Ms. Alderman in 2007 and that his sexual few encounters with her constituted sexual harassment.

Although Paragraph 16 of the Complaint states that Britt was sexually harassed for a period of seven months at the beginning of his employment, clearly recognizing that, as set forth below, any such claim is time-barred, Britt has tried to contend with his lawyer's help that he was "harassed" from the time he had sex with Ms. Alderman and then told her he no longer wanted to have sex with her until his termination. According to Britt that harassment took the form of denigration of his abilities and yelling at him, giving a contracting job that was allegedly

promised to him to someone else, and failing to address certain "legitimate" concerns regarding issues at the buildings and undocumented denial or delay of payments. There is no claim of any request for sex or of any unwanted sexual advances in the 5 ½ years between his last sexual encounter with Ms. Alderman and his termination. Defendants' Rule 56.1 Statement, paras. 46-55; Gould Affidavit, Exhibit A, Britt Dep., pp 230-241; Exhibit C. Alderman Dep., p. 43; Deposition Exhibit 2, (the Complaint).

## THE LITIGATION

Britt initially commenced an action against all defendants asserting claims of a violation of Title VII, Section 296 of the Executive Law, (The New York State Human Rights Law) and violations of the overtime provisions of the New York State Labor Law and FLSA.

After the Thermald Defendants and Alderman were forced to move for summary judgment as to the Title VII claim, based, inter alia, upon the contention that Thermald and Alderman were not employers under Title VII in that they did not have 15 or more employees and after both Wavecrest the Thermald Defendants and Alderman moved for dismissal on the ground that Plaintiff had not received a Notice of Right to Sue from the United States Equal Employment Opportunity Commission, Britt was permitted to voluntarily dismiss the first Complaint without prejudice. He subsequently commenced the instant action asserting all of the foregoing claims against all Defendants except that he did not assert a Title VII claim against Thermald or Ms. Alderman.

By reason of a recent settlement between Wavecrest and Britt, all claims against Wavecrest have been settled and dismissed and all wage claims against Alderman and Thermald have been dismissed with prejudice. Docket, Document Numbers 50, 51.

The sole remaining claim in the case is a claim against Alderman and Thermald of discrimination on the basis of sex in violation of Section 296 of the New York State Executive law (the New York State "Human Rights Law.")

Thermald and Alderman now move for summary judgment on several grounds.   First, they contend that much if not all of Plaintiff's claim is time-barred.  Second, they contend that Thermald is not an employer as defined by Section 292(5) of the New York State Human Rights Law and it has never been alleged that Ms. Alderman was Britt's employer.  Finally they maintain that the evidence of record does not support any theory of sex discrimination in employment under Section 296 of the Executive Law.

### The Standard for Summary Judgment

"Summary judgment under Rule 56 is [still] fully appropriate, indeed mandated, when the evidence is insufficient to support the non-moving party's case." *See* Celotex Corp. v. Catrett, 477 U.S. 317, 325–26, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Summary judgment applies no less to Title VII cases than to commercial cases or other areas of litigation, *id.,* and plaintiff must still offer "concrete evidence from which a reasonable juror could return a verdict in [her] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Distasio v. Perkin Elmer Corp., 157 F.3d 55, 61-62 (2d Cir. 1998)

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.1995); *accord* Celotex supra., 477 U.S. at 323; (holding that the moving party is entitled to summary judgment if there is "a complete failure of proof

concerning an essential element of the nonmoving party's case"); Gallo v. Prudential Residential

Servs., Ltd. Partnership, 22 F.3d 1219, 1223–24 (2d Cir.1994) ("[T]he moving party may obtain

summary judgment by showing that little or no evidence may be found in support of the

nonmoving party's case."). The moving party, in other words, does not bear the burden of

actually *dis*proving an essential element of the nonmoving party's claim. Cosgrove v. Fed. Home

Loan Bank of New York, 1999 WL 163218, at *5 (S.D.N.Y.). "When the burden of proof at trial

would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of

evidence to go to the trier of fact on an essential element of the non-movant's claim." Cordiano v.

Metacon Gun Club, 575 F.3d 199, 204 (2d Cir.2009).

As set forth below, there is an utter absence of evidence on this record to support the

elements of any theory of discrimination against the Plaintiff in the terms and conditions of

employment on the basis of sex.  Accordingly Defendants' Motion for Summary Judgment

should be granted.

## POINT I

### A CLAIM FOR ANY ACT WHICH OCCURRED BEFORE NOVEMBER 20, 2010 IS TIME BARRED

The statute of limitations under New York State Human Rights Law ("NYHRL") for

sexual harassment or sex discrimination is three years. See C.P.L.R § 214(2); Murphy v. Am.

Home Prods. Corp., 58 N.Y.2d 293, 307, 461 N.Y.S.2d 232, 239, 448 N.E.2d 86, 93 (1983);

Miccio v. Fits Sys., Inc., 25 A.D.3d 439, 439, 810 N.Y.S.2d 13, 14 (1st Dep't 2006); see also

Magnoni v. Smith & Laquercia, *LLP*, No. 07–CV–9875(VM), 2010 WL 1253178 (S.D.N.Y.

The Complaint in this action was filed on November 20, 2013.  Plaintiff thus cannot

recover for the allegedly unwanted sexual contact with Ms. Alderman which undisputedly

occurred in 2007 – (no sexual contact or even a request for sex- occurred thereafter-) nor can he

recover for any alleged harassment, including being subjected to a hostile work environment, which occurred prior to November 20, 2010.

"Mere continuity of employment, without more, is insufficient to prolong the life of a cause of action for employment discrimination." Roddini v. City Univ. of New York, 2003 WL 435981 (2003) citing Delaware State Coll. v. Ricks, 449 U.S. 250, 101 S.Ct. 498 (1980)

Accordingly, to the extent that Plaintiff seeks recovery for actions which occurred prior to November 20, 2013, summary judgment should be granted.


## POINT II

### SUMMARY JUDGMENT SHOULD BE GRANTED BECAUSE THERMALD IS NOT AN "EMPLOYER" AS DEFINED BY THE NEW YORK STATE HUMAN RIGHTS LAW AND IT HAS NEVER BEEN ALLEGED THAT ALDERMAN WAS BRITT'S EMPLOYER

Section 292 (5) of the New York State Executive Law (the "New York State Human Rights Law") states:

"The term "employer" does not include any employer with fewer than four persons in his or her employ except as set forth in section two hundred ninety-six-b of this title.

The threshold number of employees for application of Title VII (and therefore) for Section 296 is an element of Plaintiff's claim for relief. See Krassner v. Episcopal Diocese of Long Island 431 F.Supp.2d 320 (EDNY 2006). Plaintiff in this action has not established and cannot establish that element of his claim.

On the contrary, the record here demonstrates that at any time relevant to this action, Thermald Realty Associates I, LP was not an employer as defined by law and it has not been alleged that Doreen Alderman was Britt's employer within the meaning of Section 292(5).

Even assuming, solely for the sake of argument, that claims for relief based upon actions prior to November 20, 2010 are not time-barred, the documentary evidence consisting of

Thermald's payroll records establishes that there was no time during the years 2007 through 2011 that Thermald had more than 3 employees.  See Thermald's Rule 56.1 Statement Paragraphs 59, 60, 61, 62 and 63; Gould Affidavit, Deposition Exhibits 25, 26, 27, 28, 29, 30 and 32.

There were 8 weeks during 2012 when Thermald had four or more employees: week of 3/2 [shown on Gould Affidavit, Exhibit K as "Week 9" (4 employees)]; week of 4/6 [shown on Gould Affidavit Exhibit K as Week 14 (5 employees)]; week of 6/15[shown on Gould Affidavit, Exhibit K as Week 24 (4 employees)]; week of 8/31 [shown on Gould Affidavit Exhibit K as Week 34 (5 employees)]; week of  10/5 [shown on Gould Affidavit Exhibit K as Week 39 (5 employees)]; week of 10/12 [shown on Gould Affidavit Exhibit K as Week 40 (4 employees); week of 11/16 [shown on Gould Affidavit Exhibit K as Week 45 (5 employees); week of 12/7 [ shown  on Gould Affidavit Exhibit K as Week 48 (4 employees)]. Deposition Exhibits 33 and 34. Rule 56.1 Statement paragraph 64

There were 9 weeks during the year 2013, in which Britt was terminated, when Thermald had four or more employees: Week of January 4 [shown on Gould Affidavit Exhibit K as Week 1 (5 employees)]; week of 3/1 [shown on Gould Affidavit Exhibit K as Week 9 (5 employees); week of 3/8 [shown on Gould Affidavit Exhibit K as Week 10 (4 employees)] week of 3/15 [shown on Gould Affidavit Exhibit K as Week 11 (4 employees)]; week of 3/22 [shown on Gould Affidavit Exhibit K as Week 12  (4 employees)]; week of 3/29 [shown on Gould Affidavit Exhibit K as Week 13 (4 employees)]; week of 5/3 [shown on Gould Affidavit Exhibit K as Week 18 (4 employees)]; week of 5/10 [shown on Gould Affidavit Exhibit K as Week 19 (4 employees)]; week of 5/17 [shown on Gould Affidavit Exhibit K as Week 20 ( 4 employees)]. In the last three weeks, Britt and Zheng were no longer actually working but received payment for

10

time previously worked and for vacation and personal time. Deposition Exhibit 35; Gould Affidavit, Exhibit F.

While the Title VII definitional section defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b), see Krasner, supra at 324, Section 292 of the Executive Law contains no such definition of the relevant time period for counting employees to determine whether a particular entity falls within the statutory definition of employer.

However, it is well settled that the federal standards under title VII of the Civil Rights Act of 1964 are applied to determine whether recovery is warranted under the New York State Human Rights Law . Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 305 n. 3, 786 N.Y.S.2d 382, 819 N.E.2d 998 (2004). As this Court has stated, claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII [of the Civil Rights Act of 1964]." Pryor v. Jaffe & Asher, LLP, 992 F. Supp. 2d 252, 256-57 (S.D.N.Y. 2014). If such analytical identity is to be applied in this the case, it is clear as set forth above that Thermald[2] did not have four or more employees for each working day of 20 or more weeks at any time during Plaintiff's employment and certainly not during any period within the three year statute of limitations, to bring it within the definition of employer under Section 296 of the Human Rights Law.

Accordingly, summary judgment should be granted.

---

[2] It was never claimed or alleged that Ms. Alderman was Britt's employer.

## POINT III

**VIEWING THE RECORD MOST FAVORABLY TO THE PLAINTIFF, THERE IS INSUFFICIENT EVIDENCE FROM A REASONABLE JURY COULD FIND IN FAVOR OF PLAINTIFF ON ANY THEORY OF SEXUAL HARASSMENT**

Plaintiff's theories of recovery in this case have been a moving target. However, as set forth below, this record presents no basis for recovery on any theory of sexual harassment.

**A. Quid Pro Quo**

As a general proposition, with respect to Britt's termination, the burden-shifting framework established in McDonnell Douglas Corp v. Green, 411 U.S. 802 (1973) applies to New York Human Rights Law, N.Y. Exec. Law § 296 (McKinney 2008). Parker v. Columbia Pictures Indus., 204 F.3d 326, 332 (2d Cir.2000). See also Melman v. Montefiore Medical Center, 98 A.D.3d 107 (1st Dept., 2012) This framework requires that the plaintiff establish a *prima facie* case of discrimination by demonstrating that (1) he is a member of a protected class, (2) he is qualified for his position, (3) he was subjected to an adverse employment action, and (4) the conditions surrounding the adverse action give minimal support to an inference of discrimination. Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir.2000). Stout v. Town of Tonawanda Police Dep't, 2011 WL 1260049, at *2 (W.D.N.Y.) If the *"de minimis"* offering of the plaintiff meets this burden, then a rebuttable presumption of discrimination arises and the defendant must then provide an adequate explanation for why the actions were not discriminatory. Wanamaker v. Columbian Rope Co., 108 F.3d 462, 466 (2d Cir.1997). Stout v. Town of Tonawanda Police Dep't, 2011 WL 1260049, at *3 (W.D.N.Y.).

As set forth below, Plaintiff simply cannot fulfill the fourth element of a prima facie case – that the adverse employment action – his termination- occurred under circumstances giving rise to an inference of discrimination.

12

'[T]o establish a prima facie case of quid pro quo harassment, a plaintiff must present evidence that [he] was subject to unwelcome sexual conduct, and that [his] reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions or privileges of [his] employment.' " Gallagher v. Delaney, 139 F.3d 338, 346 (2d Cir.1998) (quoting Karibian v. Columbia Univ., 14 F.3d 773, 777 (2d Cir.), cert. denied, 512 U.S. 1213, 114 S.Ct. 2693, 129 L.Ed.2d 824 (1994)); accord, e.g., Gutierrez v. Henoch, 998 F.Supp. 329, 334 (S.D.N.Y.1998); Gibson v. Jacob K. Javits Convention Ctr., 1998 WL 132796 at *5 (S.D.N.Y.); Pell v. Trustees of Columbia Univ.,1998 WL 19989 at *14 (S.D.N.Y.); EEOC v. National Cleaning Contractors, 1997 WL 811494 at *5 (S.D.N.Y.)

In a "refusal" case—where the plaintiff rejected the alleged sexual advance (or as in this case, assuming everything Plaintiff has stated is true- where the plaintiff refused to engage in any further sexual relationship with Ms. Alderman) "the gravamen of a quid pro quo claim is that a tangible job benefit or privilege is conditioned on an employee's submission to sexual blackmail and that adverse consequences follow from the employee's refusal." Carrero v. New York City Hous. Auth., 890 F.2d 569, 579 (2d Cir.1989); see also, e.g., Karibian v. Columbia Univ.,supra. 14 F.3d at 778 ("The relevant inquiry in a quid pro quo case is whether the supervisor has linked tangible job benefits to the acceptance or rejection of sexual advances. It is enough to show that the supervisor used the employee's acceptance or rejection of his advances as the basis for a decision affecting the compensation, terms, conditions, or privileges of the employee's job."); Gostanian v. Bendel, 1997 WL 214966 at *6 (S.D.N.Y.); Corrigan v. Labrum & Doak, 1997 WL 76524 at *6 (S.D.N.Y.)

While causation may be proved indirectly by showing that an adverse employment action followed closely in time after the employee rejected or complained about the supervisor's sexual

advances, *See, e.g.*, Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir.1996); Tomka v.

Seiler Corp., 66 F.3d 1295, 1308 (2d Cir.1995); Corrigan v. Labrum & Doak, 95 Civ. 6471, 1997

WL 76524 at *7 (S.D.N.Y. Feb. 21, 1997), in the case at bar, 5 ½ years elapsed between Britt's

alleged rejection of further sexual contact with Ms. Alderman and his termination.   Simply put,

the Court cannot infer causation because there is absolutely no temporal proximity between

Britt's purported rejection of any further sexual relationship with Ms. Alderman and his

termination. Adeniji v. Admin. for Children Servs., NYC, 43 F. Supp. 2d 407, 430-31 (S.D.N.Y.)

and collected cases, aff'd sub nom. Adeniji v. Admin. For Children's Servs., 201 F.3d 430 (2d

Cir. 1999).  See particularly, Sykes v. Mt. Sinai Med. Ctr., 937 F.Supp. 270, 276 n. 9

(S.D.N.Y.1996) ("the court finds as a matter of law no close proximity in time exists between the

[protected acts "a year or two" earlier] and the discharge sufficient to establish a prima facie case

of retaliatory discharge"); Potenec v. Morgan Guar. Trust Co., 83 Civ. 4764, 1985 WL 2049 at

*3 (S.D.N.Y. July 24, 1985) (a long lapse of time "between plaintiff's employment termination

and the purported sexual advances raises serious questions about a causal nexus).

Further, even if Britt had out made a prima facie case, the Defendants have come forward

with legitimate (undisputed) reasons for the termination of Britt – and the simultaneous

termination of another employee Zheng – with whom Ms. Alderman had no sexual relationship.

While it is clear from the record that both Ms. Alderman and Wavecrest's property

manager Jay Yablonsky had certain issues with Britts' performance and that these issues entered

into the "equation" in determining whether to terminate Britt, (putting himself in the middle of

things, interfering with a broker, complaints from contractors and a tenant), the primary reason

for the change in Thermald's employees was economic. By "outsourcing" the superintendent and

porter functions to Bernardini and with the ability to rent Britt's apartment, Thermald brought more than $34,000 annually to the company's bottom line.

Thus, even if Plaintiff had made out a prima facie case of discrimination (which he has not), this undisputed economic motivation for the change in Thermald's employees militates in favor of summary judgment.

## B. Hostile Work Environment

To the extent that Plaintiff seeks to advance a claim of a hostile work environment, there is similarly insufficient evidence from which a reasonable jury could find in Plaintiff's favor on this theory.

In Pryror v. Jaffe & Asher, LLP supra., at 256-257,  this Court set forth the elements and proof needed to establish a claim of hostile work environment:

> "A plaintiff claiming relief for a hostile work environment in violation of Title VII must allege facts demonstrating that the treatment in question: "(1) 'is objectively severe or pervasive—that is, ... creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's sex.' " Patane v. Clark, 508 F.3d 106, 113 (2d Cir.2007) (quoting Gregory v. Daly, 243 F.3d 687, 691–92 (2d Cir.2001)).
>
> The "discriminatory intimidation" of the plaintiff must be "sufficiently severe or pervasive to alter the conditions of his or her work environment." Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 106 (2d Cir.2011) (quoting Mack v. Otis Elevator Co., 326 F.3d 116, 122 (2d Cir.2003)), cert. denied, —— U.S. ——, 132 S.Ct. 1744, 182 L.Ed.2d 530 (2012). "Isolated instances of harassment ordinarily do not rise to this level." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir.2000), superseded on other grounds by Local Civil Rights Restoration Act of 2005, N.Y.C. Local L. No. 85 (2005). If, however, a single incident was "extraordinarily severe," it can suffice to state a claim. Id.

*          *          *

> "Useful, though not exclusive, criteria to assess allegations of harassment include: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; (4) whether the

15

conduct unreasonably *257 interfered with plaintiff's work; and (5) what psychological harm, if any, resulted." Richardson v. New York State Dep't of Corr. Serv., 180 F.3d 426, 437 (2d Cir.1999) (internal quotation marks omitted) (quoting Harris, 510 U.S. at 23, 114 S.Ct. 367).

Viewing the facts of this case in the light most favorable to Plaintiff, the record presents absolutely no basis to support a hostile work environment claim. The acts of harassment that Plaintiff points to as giving rise to a hostile work environment are in essence criticism of his work, sometimes in front of the managing agent or in front of one of two porters, the latter of whom doesn't speak English. Another of instance of so-called harassment that Plaintiff points to being promised an outside job that he wasn't ultimately given. Plaintiff has admitted that sex was never mentioned on occasions when Ms. Alderman criticized him. Additionally, these instances were not pervasive but occurred only when Ms. Alderman was in New York which by Britt's own admission was only once every four or five months. Gould Affidavit Exhibit A, Britt Dep.,

It is respectfully submitted that the foregoing is not an environment that a reasonable person would find hostile or abusive and frankly, notwithstanding Britt's current protestations, the record here reveals that Britt himself did not find the environment subjectively abusive during the course of his employment – rather he continued his employment without complaint. There is no proof on this record that any of what Britt claims as harassment unreasonably interfered with his work environment. There is no allegation that the conduct was physically threatening or intimidating. And there is no evidence of psychological harm caused by the criticism of his work.

In sum, there is no basis in this record for a hostile work environment claim,

### C. Retaliation

Pursuant to Executive Law § 296(1)(e), an employer may not discharge an employee because he or she "has opposed any practices forbidden [under Executive Law article 15] or

because he or she has filed a complaint, testified or assisted in any proceeding [under Executive Law article 15]" (*see also* 42 USC § 2000e–3 [a] ). As set forth above, it is well settled that the federal standards under title VII of the Civil Rights Act of 1964 are applied to determine whether recovery is warranted under the Human Rights Law. *see* Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 305 (2004). The three-step analysis employed to determine the existence of retaliation is whether there has been (1) participation by the plaintiff "in a protected activity known to [the] defendant; (2) an adverse employment action; **917 and (3) a causal connection between the protected activity and the adverse employment action" (*id.* at 328, 786 N.Y.S.2d 382, 819 N.E.2d 998). Vandewater v. Canandaigua Nat. Bank, 70 A.D.3d 1434, 1435, 893 N.Y.S.2d 916, 917 (4th Dept., 2010) Suriel v. Dominican Republic Educ. & Mentoring Project, Inc., 85 A.D.3d 1464, 1466, 926 N.Y.S.2d 198 (3rd Dept.,  2011); Clauberg v. State, 95 A.D.3d 1385, 1386, 943 N.Y.S.2d 653, 655 (3d Dept., 2012);  Grovesteen v. New York State Pub. Employees Fed'n, AFL-CIO, 83 A.D.3d 1332, 1334, 921 N.Y.S.2d 700, 702 (3d Dept., 2011), lv to appeal denied, 17 NY 3d 707 (2011)

In the case at bar, the record demonstrates that prior to the termination of his employment, Plaintiff did not engage in any form of protected activity which would give rise to a retaliation claim under the NYHRL.  It is undisputed on this record that prior to his termination, Plaintiff did not complain to any governmental agency or even to Wavecrest, the owner's agent, with whom he had most contact, about sexual harassment.

Accordingly, there is no cognizable claim of retaliation in violation of the New York State Human Rights Law.

For all of the foregoing reasons, Defendants' Motion for Summary Judgment should in all respects be granted.

**CONCLUSION**

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD IN ALL
RESPECTS BE GRANTED**

Dated:  December 2, 2014
        White Plains, New York

                                        GOULD & BERG, LLP
                                        Attorney for Defendants Thermald
                                        Realty Associates I, LP and
                                        Doreen Alderman

                                        By: _Jane Bilus Gould_ (JB64570)
                                            Jane Bilus Gould (JB64510)
                                            222 Bloomingdale Road
                                            White Plains, NY 10605
                                            914-397-1050