IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RONALD BRITT                                          :
                                                      :
                    Plaintiff,                        :
                                                      :
        V.                                            :
                                                      :
THERMALD REALTY I, LP., d/b/a                         :
THERMALD REALTY ASSOCIATES I,                         :
LP. and THERMALD REALTY CORP.,                        :
THE WAVECREST MANAGEMENT                              :          Index No.: 13 Civ 8289 (KPF)
TEAM, LTD. d/b/a WAVECREST                            :
MANAGEMENT GROUP, LLC and                             :
WAVECREST EQUITIES, LLC, and                          :   **RESPONSIVE STATEMENT OF**
DOREEN ALDERMAN,                                      :   **PLAINTIFF PURSUANT TO LOCAL**
                                                      :   **RULE 56.1**
                    Defendant(s).                     :
                                                      :
                                                      :
                                                      :
                                                      :

        Plaintiff, by his attorneys, Koerner & Associates, LLC, pursuant to Local Civil Rule 56.1,

state the following responses to moving Defendants Statement of Material facts pursuant to

Local Civil Rule 56.1:

        1.      Defendant THERMALD REALTY ASSOCIATES I, LP ("Thermald") is and at

all times relevant to this action was, a New York limited partnership. Exhibit D.

                **RESPONSE:** Plaintiff admits the facts set forth in paragraph 1.

        2.      Defendant Doreen Alderman  ("Alderman") is a resident of California and is, and

at all times relevant to this action was, a partner in Thermald. Affidavit of Jane Bilus Gould in

Support of Motion for Summary Judgment, sworn December 2, 2014, ("Gould Affidavit")

Exhibit C, Alderman Dep., p. 4.

                **RESPONSE:** Plaintiff admits the facts as set forth in paragraph 2.

                                            1

3.      At all times relevant to this action, Thermald owned and continues to own three apartment buildings on the lower east side of Manhattan. (the "Thermald Buildings")  Gould Affidavit, Exhibit B, Yablonsky Dep., p. 19-20.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 3.

4.      In or about 2004, Thermald, entered property management agreements according to the terms of which Wavecrest was to manage the Thermald buildings.  Gould Affidavit, Exhibit B, Yablonsky Dep., p. 86, Deposition Exhibit 24.

**RESPONSE:**  Plaintiff admits the facts set forth in paragraph 4.

5.      On or about January 1, 2007, Wavecrest on behalf of Thermald entered into an employment agreement with the Plaintiff, Ronald Britt, ("Britt") by the terms of which inter alia, Britt was to be a live in "superintendent" and to be responsible for the Thermald buildings and for emergencies occurring at one other building. Gould Affidavit, Exhibit A, Britt Dep., p. 29.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 5.

6. Paragraph 12 of the Complaint in this action makes reference to "Plaintiff's Employment Agreement" and refers to Exhibit A to the Complaint, as copy of that Agreement. Gould Affidavit, Exhibit A, Britt Dep., p. 30-31, Deposition Exhibit 2.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 6.

7.      The document that is annexed to the Complaint as Exhibit A, consists of two pages with Britt's signature on the second page; a review of that Exhibit A to the Complaint clearly indicates that there are pages missing from the document. Britt's counsel has stated that "there may be pages missing" but what was annexed to the Complaint are all the pages that Plaintiff has. Gould Affidavit, Exhibit A, Britt Dep., p. 37; Deposition Exhibit 2.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 7.

8.      According to Jay Yablonsky, the Director of Property Management for the Wavecrest Defendants, Exhibit A to the Complaint does not appear to be the entirety of the employment agreement entered into and signed by Wavecrest and Ronald Britt. Gould Affidavit Exhibit B, Yablonsky Dep., pp. 92-93

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 8.

9.      Wavecrest was unable to locate a copy of the full agreement as executed by Britt. Gould Affidavit, Exhibit B, Yablonsky Dep., p.95

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 9.

10.     Yablonsky testified that Deposition Exhibit 4, which also appears to be an employment agreement between Britt and Wavecrest as agent for Thermald, was also missing a page. Gould Affidavit Exhibit B, Yablonsky Dep., p. 95; Deposition Exhibit 4.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 10.

11.     Deposition Exhibit 3, which was printed from Yablonsky's computer and not on Wavecrest letterhead in sum and substance was the document ultimately signed by Wavecrest and Britt. Gould Affidavit, Exhibit B, Yablonsky Dep., p. 94; Deposition Exhibit 3.

**RESPONSE:** Plaintiff admits the facts  set forth in paragraph 11.

12.     According to the terms of the agreement that Britt actually signed, Britt was an employee at will.  Gould Affidavit, Exhibit B, Yablonsky Dep., p. 97; Deposition Exhibit 3,

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 12.

13.     According to the terms of the agreement that Britt actually signed, Britt received, as part of his compensation, in addition to a weekly sum which increased over time,  a rent-free apartment, payment for certain utilities and reimbursement for the cost of his phone.  Gould Affidavit, Exhibit B, Yablonsky Dep., pp 96-99; Deposition Exhibit 3.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 13.

14.     According to the terms of the Agreement that Britt actually signed, the compensation set forth in the Agreement was to be "full compensation" for all services performed pursuant the Agreement.  Gould Affidavit, Exhibit B, Yablonsky Dep. p. 99; Deposition Exhibit 3.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 14.

15.     According to the terms of the Agreement that Britt actually signed, he was required to vacate the apartment within 30 days of the termination of his job. Gould Affidavit, Exhibit A, Britt Dep., p. 332.

**RESPONSE:**  Plaintiff admits the facts set forth in paragraph 15.


16.     During 2007, the first year of Britt's employment by Thermald, Britt and Alderman had sexual relations a total of three times on a total of two occasions. Gould Affidavit, Exhibit A,  Britt Dep., pp. 213

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 16.

17.     Britt claims he told Ms. Alderman on the second occasion that he no longer wanted to have sex with her. Gould Affidavit Exhibit A, Britt Dep., pp 217-219.

**RESPONSE:** Plaintiff admit the facts set forth in paragraph 17.

18.     The second occasion on which they had sex and on which Britt claims to have told Alderman that he no longer wanted to have sex with her occurred prior to Alderman's father's death. Gould Affidavit, Exhibit A, Britt Dep., p.310-311

**RESPONSE:** Plaintiff admits thefacts contained in paragraph 18.

19.  Alderman's father, Therman Alderman, died on October 17, 2007.  Exhibit E.

4

**RESPONSE:** Plaintiff admits the facts contained in paragraph 19.

20.  Britt and Alderman did not have sexual relations after the death of Ms. Alderman's father. Gould Affidavit, Exhibit A, Britt Dep., p. 219; 310-311

**RESPONSE:** Plaintiff admits the facts contained in paragraph 20.

21.  Alderman did not ask Britt for sex after he told her that he no longer wanted to have sex with her.  Gould Affidavit, Exhibit A, Britt Dep., p. 220.

**RESPONSE:** Plaintiff admits the facts contained in paragraph 21 in so much as Alderman did not verbally request sex from the Britt after he told her he no longer wanted to have sex.  Alderman did continue to make overtly sexual advances toward Mr. Britt.  See Gould Affidavit, Exhibit A, Britt Depo., p. 220 -221, Koerner Affidavit, Exhibit A, Britt Affidavit.

22.  Britt continued to work for Thermald for approximately 5 ½ years after their last sexual encounter until his termination in April 30, 2013.  Deposition Exhibit 17.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 22.

23.  In addition to Britt, another employee, the porter, Zheng was also terminated on April 30, 2013.  Gould Affidavit, Exhibit A, Britt Dep., pp 325-327; Exhibit B, Yablonsky Dep., p.60,  Exhibit C, Alderman Dep., p. 145.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 23.

24.  Ms. Alderman did not have a sexual relationship with Zheng.  Gould Affidavit, Exhibit C, Alderman Dep.  p.45.

**RESPONSE:** Plaintiff admit the facts set forth in paragraph 24.

25.  In addition to the work and compensation described above, during the course of his employment, Britt performed other "handyman" work on an "as needed" and "as agreed" basis

in the Thermald buildings. Gould Affidavit, Exhibit A, Britt Dep., pp 133-191.Exhibit B,

Yablonsky Dep.,  pp 106-116

      **RESPONSE:** Plaintiff admits the facts set forth in paragraph 25.

      26.  Britt was paid for that additional work as agreed upon between him and Wavecrest

and/or Thermald. Gould Affidavit, Exhibit A, Britt Dep. pp 133-191; Deposition Exhibits 7,8, 9,

10, 11, 12.

      **RESPONSE:** Plaintiff disputes the facts as alleged in paragraph 26.  Plaintiff was not

compensated for all agreed upon work between him and Wavecrest and/or Thermald.  See Gould

Affidavit Exhibit A, Britt Dep. p 221.

      27.  The main basis for the decision to terminate Britt – and Zheng - was economic.

Gould Affidavit Exhibit B, Yablonsky Dep., pp. 39, 60.

      **RESPONSE:** Plaintiff disputes the facts as set forth in paragraph 27.  Plaintiff was fired

as part of the years-long campaign of harassment and degradation by Alderman against Britt.

See Koerner Affidavit, Exhibit A, Britt Affidavit.

      28.  It was more cost effective for the building to terminate the superintendent and the

porter and to hire an outside service and rent the apartment that was being used by the super.

Gould Affidavit Exhibit B, Yablonsky Dep., p. 39.

      **RESPONSE:** Plaintiff disputes the facts as set forth in paragraph 28.  Plaintiff was fired

as part of the years-long campaign of harassment and degradation by Alderman against Britt.

See Koerner Affidavit, Exhibit A, Britt Affidavit.

29. Ms. Alderman located a company, Bernardini Associates, who would provide the porter and superintendent services on an outsource basis. Gould Affidavit, Exhibit B, Yablonsky Dep., pp.140-144.

**RESPONSE:** Plaintiff disputes the facts as set forth in paragraph 29. Plaintiff was fired as part of the years-long campaign of harassment and degradation by Alderman against Britt. See Koerner Affidavit, Exhibit A, Britt Affidavit.

30. Bernardini submitted a proposal to Thermald and Wavecrest by the terms of which it would perform superintendent and porter services for the three buildings owned by Thermald for $2400 per month. Gould Affidavit Exhibit B, Yablonsky Dep., pp 140-144; Deposition Exhibit 36.

**RESPONSE:** Plaintiff disputes the facts as set forth in paragraph 30. Plaintiff was fired as part of the years-long campaign of harassment and degradation by Alderman against Britt. See Koerner Affidavit, Exhibit A, Britt Affidavit.

31. Ms. Alderman and Mr. Yablonsky looked at the Bernardini proposal and they thought it was compelling. If it was accepted, they would not have to pay for Britt's utilities or Britt's phone, they wouldn't have to pay Britt or the porter Zheng (Bernardini required that to accept the job they would perform both superintendent and porter duties), and they would have Britt's apartment to rent. Gould Affidavit Exhibit C, Alderman Dep., p. 215.

**RESPONSE:** Plaintiff disputes the facts as set forth in paragraph 31. Plaintiff was fired as part of the years-long campaign of harassment and degradation by Alderman against Britt. See Koerner Affidavit, Exhibit A, Britt Affidavit.

32. In fact, after settlement of an eviction proceeding that Thermald was forced to bring, Britt's apartment was rented for $2100 per month. Gould Affidavit Exhibit A, Britt Dep., p. 8; Exhibit B, Yablonsky Dep., p 183; Exhibit C, Alderman Dep., pp 250-252; Exhibit G

**RESPONSE:** Plaintiff disputes the facts as set forth in paragraph 32. Plaintiff was fired as part of the years-long campaign of harassment and degradation by Alderman against Britt. See Koerner Affidavit, Exhibit A, Britt Affidavit.

33. At the time of his termination, Britt's weekly compensation was $350.00 Gould Affidavit, Exhibit F.

**RESPONSE:** Plaintiff admits the facts as set forth in paragraph 33.

34. At the time of his termination, Britt received an additional $50.00 per week for phone reimbursement. Deposition Exhibit 33; Exhibit F.

**RESPONSE:** Plaintiff admits the facts as set forth in paragraph 34

35. At the time of his termination Zheng's weekly compensation was $330 per week. Gould Affidavit, Exhibit F.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 35.

36. The total annual cost for Bernardini is $28,800 ($2400 x 12). Deposition Exhibit 36.

37. The total annual cost for Britt, including telephone reimbursement (not including paid utilities) and Zheng is $37, 960. ($350 x 52 + $50 x 52 + $330 x 52 = $37, 960). Exhibit F.

**RESPONSE:** Plaintiff disputes the facts as set forth in paragraph 36. Plaintiff was fired as part of the years-long campaign of harassment and degradation by Alderman against Britt. See Koerner Affidavit, Exhibit A, Britt Affidavit.

8

38.  On an annual basis, the cost of using Bernardini is $9160.00 less than employing

Britt and Zheng. (This does not include FICA contributions.) Exhibit H.

**RESPONSE:** Plaintiff disputes the facts as set forth in paragraph 38.  Plaintiff was fired

as part of the years-long campaign of harassment and degradation by Alderman against Britt.

See Koerner Affidavit, Exhibit A, Britt Affidavit.

39.  In addition Thermald will now be collecting annual rent on Britt's apartment of in

the amount of $25,200. ($2100 x 12) Exhibit G.

**RESPONSE:** Plaintiff disputes the facts as set forth in paragraph 39.  Plaintiff was fired

as part of the years-long campaign of harassment and degradation by Alderman against Britt.

See Koerner Affidavit, Exhibit A, Britt Affidavit.

40.  The total additional annual amount coming to Thermald's bottom line as a result of

hiring Bernardini, terminating Britt and Zheng and renting the apartment previously occupied by

Britt is therefore $34,360.  See Chart, Gould Affidavit, Exhibit H.

**RESPONSE:** Plaintiff disputes the facts as set forth in paragraph 40.  Plaintiff was fired

as part of the years-long campaign of harassment and degradation by Alderman against Britt.

See Koerner Affidavit, Exhibit A, Britt Affidavit.

41.  In addition to economic reasons for terminating Britt, the perception of Britt's job

performance also went into the equation.  Gould Affidavit Exhibit B, Yablonsky dep., p. 43-44.

**RESPONSE:** Plaintiff disputes the facts as set forth in paragraph 41.  Plaintiff performed

his job in a satisfactory fashion.  Yablonsky provided Britt with a glowing recommendation

following his termination.  Additionally, multiple residents of the building commended Britt's

performance as superintendent.  See Gould Affidavit Exhibit B, Yablonsky dep., p. 32-33,

Koerner Affidavit, Exhibit B, Letter of Recommendation from Jay Yablonsky, Exhibit C, Letters from building tenants.

42. Yablonsky's view was that there were times when Britt's job performance was problematic. Gould Affidavit, Exhibit B, Yablonsky Dep., pp 55-56.

**RESPONSE:** Plaintiff disputes the facts as set forth in paragraph 42. Plaintiff performed his job in a satisfactory fashion. Yablonsky provided Britt with a glowing recommendation following his termination. Additionally, multiple residents of the building commended Britt's performance as superintendent. See Gould Affidavit Exhibit B, Yablonsky dep., p. 32-33, Koerner Affidavit, Exhibit B, Letter of Recommendation from Jay Yablonsky, Exhibit C, Letters from building tenants.

43. Yablonsky's view was that at times, Britt was "more trouble than he was worth." Britt had a tendency to complicate things, to put himself in the center of things and management received complaints from both tenants and contractors that he created issues. Gould Affidavit Exhibit B, Yablonsky Dep., pp 40-41

**RESPONSE:** Plaintiff disputes the facts as set forth in paragraph 43. Plaintiff performed his job in a satisfactory fashion. Yablonsky provided Britt with a glowing recommendation following his termination. Additionally, multiple residents of the building commended Britt's performance as superintendent. See Gould Affidavit Exhibit B, Yablonsky dep., p. 32-33, Koerner Affidavit, Exhibit B, Letter of Recommendation from Jay Yablonsky, Exhibit C, Letters from building tenants.

44. Yablonsky also recalled that they had received a complaint about Britt from a broker they had used. Gould Affidavit Exhibit B, Yablonsky Dep., pp 40-41

**RESPONSE:** Plaintiff disputes the facts as set forth in paragraph 44. Plaintiff performed his job in a satisfactory fashion. Yablonsky provided Britt with a glowing recommendation following his termination. Additionally, multiple residents of the building commended Britt's performance as superintendent. See Gould Affidavit Exhibit B, Yablonsky dep., p. 32-33, Koerner Affidavit, Exhibit B, Letter of Recommendation from Jay Yablonsky, Exhibit C, Letters from building tenants.

45.    Ms. Alderman was not happy with some aspects of Britt's performance. Gould Affidavit Exhibit B, Yablonsky Dep., p. 74.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 45.

46.    Ms. Alderman found Britt's performance to be inconsistent. Gould Affidavit, Exhibit C, Alderman Dep., p. 124

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 46.

47.    Shortly before Britt was terminated, Ms. Alderman emailed him and directed him not to interfere with the leasing of her buildings. Deposition Exhibit 18.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 47.

48.    This email followed Ms. Alderman's receipt of an email from a broker complaining that a quote for a rental had been given by the super. Gould Affidavit, Exhibit I.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 48 in so much as an email appears to have been sent to Ms. Alderman from a broker complaining that a quote for a rental had been given by "the super". The individual complaining did not identify "the super" as Britt. See Gould Affidavit, Exhibit I, Koerner Affidavit, Exhibit A, Britt Affidavit.

49.    There was at least one written complaint about Britt from a tenant. Gould Affidavit, Exhibit J.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 49.

## THE RECORD DOES NOT SUPPORT A CLAIM OF A SEXUALLY HOSTILE WORK ENVIRONMENT

50.   Britt alleges at Paragraph 16 of the Complaint, a "pattern of discrimination" on the part of Alderman which he described at his deposition as a) yelling ("there was a period when I couldn't do anything right; no matter how hard I tried or how good things were they weren't good enough;"  b) insults (being called a "moron" or "some kind of idiot"); c) disparaging his abilities (described vaguely by Britt as Alderman having blamed the plumber for something and then having blamed Britt for not "hassling the plumber.)"   Gould Affidavit, Exhibit A, Britt Dep., pp 230-235.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 50

51.   According to Britt, these insults were uttered in front of Jay Yablonsky of Wavecrest, in front of a porter, a "Rich" and in front of Zheng, who only spoke Chinese. Exhibit Britt Dep., p. 231.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 51.

52.   Sex was never mentioned during these so-called insults.  Gould Affidavit Exhibit A, Britt Dep. p. 233.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 52.

53.   According to Britt the foregoing occurred when Ms. Alderman came into town which was once every four or five months.  Gould Affidavit Exhibit A, Britt Dep., p. 231

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 53.

54.   Britt initially claimed that these insults started around the time Alderman started dating "Richard," "the fellow she's dating now" and then tried to claim that these work-related

insults were uttered since he stopped having sex with her.  Gould Affidavit, Exhibit A, Britt
Dep., pp 235-236

      **RESPONSE:** Plaintiff admits the facts set forth paragraph 54.

      55.  Ms. Alderman first met "Richard" in May 2010.  Gould Affidavit Exhibit C,
Alderman Dep., p. 43.

      **RESPONSE:** Plaintiff admits the facts set forth in paragraph 55

      56. Britt alleges at Paragraph 16 of the Complaint that among the acts that were part of a
pattern of harassment after his alleged refusal to have sex with Ms. Alderman was a denial or
delay of payments. Complaint, Deposition Exhibit 2.

      **RESPONSE:** Plaintiff admits the facts set forth in paragraph 56.

      57.  Britt was unable to state how many invoices he submitted which had not been paid
and no such invoices have been produced.  Gould Affidavit Exhibit A, Britt Dep., pp 238-239

      **RESPONSE:** Plaintiff admits the facts set forth in paragraph 57.

      58.  A part of the alleged pattern of harassment to which Britt was allegedly subjected
after telling Ms. Alderman that he would not have sex with her again was "refusing to address
his legitimate concerns regarding maintenance in the buildings." Deposition Exhibit 2,
Complaint, Paragraph 16.

      **RESPONSE:** Plaintiff admits the fact set forth in paragraph 58.

      59.  When asked at his deposition to explain how this was part of the pattern of
harassment, the only circumstance he pointed to was that Ms. Alderman gave an "outside job"
that he claims she promised to him to other people to complete.    Gould Affidavit Exhibit A,
Britt Dep., pp. 234-241

      **RESPONSE:** Plaintiff admits the facts set forth in paragraph 59.

60.   Prior to the termination his employment, Britt did not complain to any governmental agency about sexual harassment during the course of his employment. Gould Affidavit, Exhibit A, Britt Dep., pp. 233.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 60.

61.   Prior to the termination of his employment, Britt had never told Wavecrest that he had any sort of sexual relationship with Alderman. Gould Affidavit, Exhibit A, Britt Dep., p. 231.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 61.

62.   Britt never complained to any representative of Wavecrest about sexual harassment during the course of his employment. Gould Affidavit Exhibit B, Yablonsky Dep., p. 84.

**RESPONSE:** Plaintiff admits the facts set forth in paragraph 62.

63.   During the year 2007, there was no time when Thermald had more than 3 employees.  Gould Affidavit Exhibit B, Yablonsky Dep., p. 118; Deposition Exhibit 25.

**RESPONSE:** Plaintiff disputes the facts set forth in paragraph 63.  During her deposition testimony, Alderman admitted to having three employees other than Britt and the building's porter.  See Gould Affidavit, Exhibit C, p. 104.

64.   During the year 2008 there was no time when Thermald had more than 2 employees. Gould Affidavit Exhibit B, Yablonsky Dep., p. 118; Deposition Exhibits 26 and 27. Yablonsky Dep., pp 120-121

**RESPONSE: :** Plaintiff disputes the facts set forth in paragraph 63.  During her deposition testimony, Alderman admitted to having three employees other than Britt and the building's porter.  See Gould Affidavit, Exhibit C, p. 104.

65.   During the year 2009 there was no time when Thermald had more than 3 employees. Deposition Exhibits 28 and 29.  Yablonsky Dep., p 124-125

**RESPONSE: :** Plaintiff disputes the facts set forth in paragraph 63.  During her deposition testimony, Alderman admitted to having three employees other than Britt and the building's porter.  See Gould Affidavit, Exhibit C, p. 104.

66.   There was no time in the year 2010 when Thermald had more than 2 employees. Deposition Exhibit 30.

**RESPONSE: :** Plaintiff disputes the facts set forth in paragraph 63.  During her deposition testimony, Alderman admitted to having three employees other than Britt and the building's porter.  See Gould Affidavit, Exhibit C, p. 104.

67. There was no time in the year 2011 when Thermald had more than 3 employees and in fact during the year 2011, Thermald did not have as many as 3 employees for more than 5 weeks. Deposition Exhibit 32.

**RESPONSE: :** Plaintiff disputes the facts set forth in paragraph 63.  During her deposition testimony, Alderman admitted to having three employees other than Britt and the building's porter.  See Gould Affidavit, Exhibit C, p. 104.

68.   There were 8 weeks during 2012 when Thermald had four or more employees: week of 3/2 [shown on Gould Affidavit, Exhibit K as "Week 9" (4 employees)]; week of 4/6 [shown on Gould Affidavit Exhibit K as Week 14 (5 employees)]; week of 6/15[shown on Gould Affidavit, Exhibit K as Week 24 (4 employees)]; week of 8/31 [shown on Gould Affidavit Exhibit K as Week 34 (5 employees)]; week of  10/5 [shown on Gould Affidavit Exhibit K as Week 39 (5 employees)]; week of 10/12 [shown on Gould Affidavit Exhibit K as Week 40 (4 employees); week of 11/16 [shown on Gould Affidavit Exhibit K as Week 45 (5 employees);

15

week of 12/7 [ shown  on Gould Affidavit Exhibit K as Week 48 (4 employees)]. Deposition

Exhibits 33 and 34.

**RESPONSE: :** Plaintiff disputes the facts set forth in paragraph 63.  During her

deposition testimony, Alderman admitted to having three employees other than Britt and the

building's porter.  See Gould Affidavit, Exhibit C, p. 104.

69.  There were 9 weeks during the year 2013 when Thermald had four or more

employees: Week of January 4 [shown on Gould Affidavit Exhibit K as Week 1 (5 employees)];

week of 3/1 [shown on Gould Affidavit Exhibit K as Week 9 (5 employees); week of 3/8 [shown

on Gould Affidavit Exhibit K as Week 10 (4 employees)] week of 3/15 [shown on Gould

Affidavit Exhibit K as Week 11 (4 employees)]; week of 3/22 [shown on Gould Affidavit

Exhibit K as Week 12  (4 employees)]; week of 3/29 [shown on Gould Affidavit Exhibit K as

Week 13 (4 employees)]; week of 5/3 [shown on Gould Affidavit Exhibit K as Week 18 (4

employees)]; week of 5/10 [shown on Gould Affidavit Exhibit K as Week 19 (4 employees)];

week of 5/17 [shown on Gould Affidavit Exhibit K as Week 20 ( 4 employees)]. In the last three

weeks, Britt and Zheng were no longer actually working but received payment for time

previously worked and for vacation and personal time. Deposition Exhibit 35; Gould Affidavit,

Exhibit F.

**RESPONSE: :** Plaintiff disputes the facts set forth in paragraph 63.  During her deposition

testimony, Alderman admitted to having three employees other than Britt and the building's

porter.  See Gould Affidavit, Exhibit C, p. 104..

70.  There was no year during Britt's employment by Thermald when Thermald had four

or more employees for each working day of 20 weeks in the year.  Gould Affidavit Exhibit B,

Yablonsky Dep., p.116.

**RESPONSE: :** Plaintiff disputes the facts set forth in paragraph 63.  During her deposition testimony, Alderman admitted to having three employees other than Britt and the building's porter.  See Gould Affidavit, Exhibit C, p. 104.

71.  It has not been alleged that Doreen Alderman was Britt's employer. See Complaint, Deposition Exhibit 2.

**RESPONSE:** Plaintiff disputes the facts set forth in paragraph 71. See Gould Affidavit, Exhibit C, p. 107, 141, and 143.

## PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS NOT IN DISPUTE

72.  Following the final instance of sexual intercourse between Britt and Alderman in 2007, Alderman continued to make unwanted sexual advances toward Britt.  See Gould Affidavit, Exhibit A, Britt Depo., p. 220 -221, Koerner Affidavit, Exhibit A, Britt Affidavit.

73.  Beginning in approximately 2010, following Alderman's sexual relationship with her current boyfriend, Alderman changed her behavior from making sexual advances toward Britt to treating him with open hostility.  See Gould Affidavit, Exhibit A, Britt Depo., p 231-234, Koerner Affidavit, Exhibit A, Britt Affidavit.

74.  Alderman insisted on the hiring of Ronald Britt as superintendent, supervised his work, and insisted that Britt be terminated as superintendent.  See Gould Affidavit, Exhibit C, p. 107, 141, and 143.

75.  Alderman admitted to having at least three employees other than Britt in her deposition.  See Gould Affidavit, Exhibit C, p. 104

Dated:  February 3, 2015
New York, New York

By: _____

Gregory Koerner, Esq.
Koerner & Associates, LLC
Attorneys for Plaintiff
233 Broadway, Suite 2208
New York, NY 10279
(212)461-4377